IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **ROLANDO REYES, JR.,**<br>*Plaintiff*<br><br>vs.<br><br>**JOHNNY CAGLE, OFFICER O. MENDOZA, OFFICER JOHN DOE and CITY OF LAKE JACKSON**<br>*Defendants.* | Case No.: 3:22-cv-114<br>JURY |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff **ROLANDO REYES, JR.**, by and through his attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this *Plaintiff's Original Complaint* complaining of Defendants **CITY OF LACK JACKSON**, **JOHNNY CAGLE**, **O. MENDOZA**, and **JOHN DOE** and respectfully alleges as follows:

### INTRODUCTION

1. Rolando Reyes, Jr., a law-abiding citizen, brings this civil action for damages against the City of Lake Jackson, former City of Lake Jackson police officer Johnny Cagle, City of Lake Jackson police officer O. Mendoza, and the supervising officer, John Doe. Defendants Cagle and Mendoza detained, assaulted, and arrested Plaintiff because he was photographing or filming police activity, a constitutionally protected activity. These officers lacked training, were not properly supervised, and did not care about a citizen's constitutional right to photograph or film police activity. The City of Lake Jackson's failure to train and supervise its officers on the constitutional rights of citizens was entirely predictable and these failures resulted in Plaintiff sustaining head, back, and psychological injuries for which he is still receiving treatment for today. Plaintiff was harmed and seeks recovery in this lawsuit.

## JURISDICTION AND VENUE

2. This is a civil rights action in which the Plaintiff seeks relief for the violations of his rights secured by 42 U.S.C. § 1983 and the First and Fourth Amendments.

3. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

4. Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

5. The events that gave rise to this lawsuit took place next to the parking lot exit for Brazos Mall, at 104 State Highway 288 located in Lake Jackson, Texas, in Brazoria County.

## PARTIES

6. Plaintiff ROLANDO REYES, JR, ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of Angleton, County of Brazoria, State of Texas.

7. Defendant CITY OF LAKE JACKSON ("Defendant City") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action. Defendant is responsible for the policies, practices, and procedures of its Police Department and individual officers.

8. Defendant OFFICER JOHNNY CAGLE ("Defendant Cagle") was at all pertinent times a police officer employed by the City of Lake Jackson and was at all pertinent times acting under color of state law in performance of his duties as a Lake Jackson police officer.

9. Defendant OFFICER O. MENDOZA ("Defendant Mendoza") was at all pertinent times a police officer employed by the City of Lake Jackson and was at all pertinent times acting under color of state law in performance of his duties as a Lake Jackson police officer.

10. Defendant OFFICER JOHN DOE ("Defendant Doe") was at all pertinent times a police supervisor employed by the City of Lake Jackson and was at all pertinent times acting under color of state law in performance of his duties as a Lake Jackson police officer.

11.     Each and all the acts of Defendant Officers alleged herein were committed by said Officers while acting within the scope of their employment with the Defendant City's Police Department.

12.     Each and all of the acts of Defendant Officers were committed by these Officers despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## STATEMENT OF FACTS

13.     This action involves a series of events following an incident that occurred on the afternoon of March 4, 2022, which are addressed herein chronologically.

14.     Plaintiff, a civic-minded member of the Lake Jackson community, believes strongly in community involvement and local awareness.  To such an end, in September of 2020 he created, and is currently the administrator for, the private Facebook page ⚠ Brazoria County News ⚠, to keep his locale apprised of current goings-on.

15.     This page is "intended to provide local news happenings from traffic accidents, events, and business news."  It also serves as a shout-out for local businesses doing an outstanding job.  As the page intends to be a reliable resource for Brazoria County residents, news posts need to include citations and official links to verify their validity.  All posts need to "be kind and courteous" and focus on "news and events only"; if they are "repeat news or [are] missing details", posts may be declined.  At the time of this incident, the page had over 10,000 members.

16.     After the incident at issue in this lawsuit, the City of Lake Jackson became a member of Plaintiff's news-oriented Facebook group.

17. On March 4, 2022, at about 1:30 PM, Plaintiff and his wife were leaving the Brazos Mall, a large modern shopping center with over 50 stores. As they were leaving from the exit near Starbucks, Plaintiff saw several large tow trucks blocking the frontage road to Highway 288.

18. Curious about what was going on, Plaintiff directed his wife to pull over and park. He then approached the scene on foot, walking on the public easement while taking pictures. Plaintiff frequently takes pictures of car accidents he sees in the Brazoria County area. If the accident looks like it may be interesting to other residents, he shares the pictures on his Facebook group.

19. As Plaintiff approached closer, he saw that Defendants Cagle and Mendoza were handling the cleanup for a minor car accident.

20. A woman at the scene loudly called out to the police officers asking if Plaintiff was with them. When Defendant Cagle saw Plaintiff taking photos of the scene dozens of feet away, he began walking towards Plaintiff.

21. When Defendant Cagle reached Plaintiff, he asked him why he was there. Plaintiff responded that he was taking photos. Defendant Cagle asked if Plaintiff was part of the accident scene. Concerned about how this encounter might go, Plaintiff quickly started to record on his phone for his safety. Plaintiff asked Defendant Cagle to repeat his questions. Plaintiff then told him again he was there to take photographs.

22. Defendant Cagle, not satisfied with why Plaintiff, a law-abiding citizen standing in a public place, unlawfully demanded Plaintiff to leave. When Plaintiff did not immediately comply with this unlawful order, Defendant Cagle asked for Defendant Mendoza to come over.

23. Defendant Cagle told Defendant Mendoza that Plaintiff was breaking the law by taking pictures of other people's vehicles and license plates from a public space. Defendants Cagle and Mendoza lacked training by Defendant City to know that Plaintiff was not breaking the law through his conduct.

24. Nevertheless, Defendants Cagle and Mendoza continued to unlawfully order Plaintiff to leave.

25. Plaintiff, believing that Defendant City's police officers would adhere to the laws of the land, responded that they were not going to stop him from taking photographs from a public space.

26. Defendant Cagle asked Plaintiff if he worked for the newspaper. Plaintiff, who was photographing the scene potentially in the capacity of the press, knew he did not have to be an "official"—if such a category even exists—member of the press to have a right to disseminate information to the public.

27. Plaintiff informed Defendant Cagle that he did not have to work for the newspaper to take public photography. Defendant Cagle again insisted that Plaintiff was not allowed to take pictures of other people's license plates. When Plaintiff tried to inform Defendant Cagle that this was incorrect information, Defendant Cagle ignorantly told Plaintiff that he needed to learn the law. Plaintiff tried to explain again that he is allowed to take photos in public.

28. At this point, Defendant Cagle tried to make Plaintiff identify himself, because he was on their accident scene. Plaintiff asked Defendant Officers to identify themselves. After they did so, Plaintiff, as is his right, refused to identify himself. Defendant Cagle again unlawfully ordered Plaintiff to leave. When Plaintiff refused, Defendant Cagle radioed dispatch requesting a supervisor's presence.

29. When Plaintiff accused Defendant Officers of coming to intimidate him to silence his constitutional rights to free speech and the freedom of the press, Officer Cagle got in Plaintiff's face arguing that Plaintiff came onto their accident scene. Plaintiff tried again to explain the basic concept of public property and requested that Defendant Cagle lower his voice.

30. Defendant Cagle, in front of bystanders observing the situation, proceeded to get into an argument about Plaintiff's presence at the scene. When Defendant Cagle again asked why Plaintiff was at the scene, Plaintiff told him that it was none of his business. Defendant Cagle again tried to order Plaintiff to identify himself, claiming that he had now included himself in the accident. Plaintiff refused. Defendant Cagle again ordered Plaintiff to leave.

31. When Plaintiff did not leave the scene, Defendant Cagle asked Defendant Mendoza to back him up. Defendant Mendoza joined in questioning Plaintiff why he was there at a public space observing an accident scene.

32. Plaintiff told Defendant Mendoza to go deal with the accident, but Defendant Mendoza informed Plaintiff that there was no longer an accident scene.

33. Plaintiff told Defendant Officers that he did not need their permission to be present, and he requested that Defendant Officers leave him alone. Plaintiff asked the officers to move back noting that had he approached them as closely as they approached him, they would have arrested him.

34. Defendant Cagle responded that Plaintiff was on their scene and interfering with their investigation—an investigation that Defendant Mendoza had already admitted was completed.

35. Plaintiff again informed Defendant Officers that he was allowed to photograph an event occurring in the public, and that he was far enough back and out of the way to not interfere with their investigation.

36. Defendant Cagle, who had already waved his finger near Plaintiff's face, ordered Plaintiff not to gesture with his finger near him. Plaintiff told Defendant Cagle, who was standing right in front of Plaintiff, that he needed to back up then. (If he was not standing very close to Plaintiff, Plaintiff's finger would not be able to intrude upon Defendant Cagle's personal space.)

Defendant Cagle again insisted that this was his and Defendant Mendoza's scene and unlawfully ordered Plaintiff to leave. Plaintiff, who knew his rights as a citizen, refused to leave, firmly standing his ground.

37. Suddenly, without provocation, Defendant Cagle got into Plaintiff's face, nearly chest to chest. When Plaintiff did not move back, he hit Plaintiff's phone, knocking it to the ground.

38. Defendants Cagle and Mendoza then began attacking Plaintiff in a flurry of grabs at his arms, neck, and other body parts. Plaintiff ended up on the ground where the grassy ditch met the concrete curb.

39. While Plaintiff's stomach was on the concrete curb, Defendant Cagle sat on Plaintiff's back with his full weight while (and after) he placed handcuffs on Plaintiff. Defendant Cagle's continued force on Plaintiff's back while pushing Plaintiff's stomach into the concrete curb distressed Plaintiff and kept him from being able to breathe properly.

40. Several officers, arriving on the scene, joined Cagle and Mendoza. In front of these officers, Plaintiff pleaded multiple times with Defendant Cagle to get off of him so that he could breathe. He also asked to be allowed to turn over.

41. Defendant Cagle, while still sitting on Plaintiff, explained to his supervisor what had happened. Defendant Cagle, who knew that he had no justification for his use of excessive force against Plaintiff, tried to coverup his actions; he lied and told his supervisor, Defendant Doe, that he had to take Plaintiff down because Plaintiff was reaching for something—implied was the insinuation that Plaintiff was an immediate threat to Defendants Cagle and Mendoza.

42. Defendant Mendoza, who was right next to them, did not correct Defendant Cagle's story.

Case 3:22-cv-00114   Document 1   Filed on 04/13/22 in TXSD   Page 8 of 20

43. While Defendant Cagle lied to his supervisors, Plaintiff tried to correct the story, but Defendant Officers ignored him. He also begged for Defendant Cagle to get off of him and to be allowed to turn over, because he could not breathe. A nearby EMT with Defendant City's fire department told Plaintiff that if he could talk, he could breathe.

44. Defendant Cagle, who had been sitting on Plaintiff's back for close to a minute, finally stood. Plaintiff rolled over, trying to let his chest decompress.

45. Once Defendant Cagle moved away, a shocked Plaintiff asked officers standing near him if they had their body cameras on and were recording this conversation.

46. Several officers responded that their body cameras were recording (**which Plaintiff expects to be preserved**). Plaintiff tried to tell Defendant Officers, including Defendant Doe, that he was not reaching for anything. He was ignored.

47. Defendant Doe did not have his officers on scene investigate the situation, even though Defendants Cagle and Mendoza had used physical violence against Plaintiff.

48. Plaintiff was never asked his side of the story, nor were any nearby witnesses interviewed.

49. When EMS arrived at the scene, Defendant Cagle went to them to receive medical treatment asserting that he injured his finger.

50. Meanwhile, Plaintiff still lay on the ground, highly disoriented, bleeding from multiple abrasions, and struggling to breathe.

51. When Defendant City's Officers, acting under the supervision of Defendant Doe, asked Plaintiff if he wanted medical treatment, they made clear to him that only one ambulance was currently available and that they would be giving that ambulance to Defendant Cagle—for his injured finger.

Page **8** of **20**

52. Defendant City's officers offered the bleeding, gasping Plaintiff two options: Either (1) he could wait for another ambulance to become available, or (2) they could take him to the hospital in the back of a patrol car.

53. Defendant Officers moved the handcuffed Plaintiff to a patrol car, where an EMT took his blood pressure. Plaintiff told the EMT that he was out of breath, his head was hurting, and his heart was racing.

54. Defendant Doe approached the patrol car where Plaintiff was waiting. After much begging, Defendant Doe agreed to call Plaintiff's wife and inform her of what had happened.

55. While on the phone with Plaintiff's wife, Defendant Doe said that Plaintiff was being arrested for Resisting Arrest and for Simple Assault of a Peace Officer.

56. The handcuffed-Plaintiff was taken to St. Luke's Health's Brazosport Hospital in Lake Jackson in the back of a patrol car. Plaintiff arrived at the hospital at about 2:00 PM.

57. At the hospital, Plaintiff was handcuffed to the bed. Plaintiff was evaluated for right knee and head pain, along with abrasions to his knee, head, and face. Hospital staff performed an x-ray on his knee and a CT scan on his head and neck. The radiology revealed that Plaintiff, who had been taken to the ground, did have scalp swelling, but that he fortunately did not have a fractured skull or broken bones—injuries he easily could have received as a result of the excessive force Officer Cagle and Officer Mendoza used against him.

58. An officer escort received a call around 3:00 PM and was ordered to release Plaintiff from custody. The escorting officer removed the handcuffs, returned Plaintiff's hat, wallet, and phone to him, and then apologized on behalf of Defendant City.

59. Because Plaintiff was in police custody for several hours, he was also unable to communicate with his crew concerning a landscaping job in Angleton. Plaintiff ended up losing out on about $2,000.00 due to Defendants' unlawful arrest.

60. Following the March 4, 2020, events, Plaintiff's video of the interaction and the attack went viral on YouTube. Public outcry soon followed. Caving to public pressure, Lake Jackson agreed to investigate the incident. Members of the public, calling for Officer Cagle to be removed from active duty to protect the public and charged with criminal offenses, were informed that Officer Cagle had been placed on paid leave while Defendant City's police department investigated the matter. Defendant City's Assistant Chief of Police promised transparency, but Defendant City refused to release any more information to the public.

61. One March 9, 2022, five days after the incident, Defendant City accepted that public furor demanded an actual response. Defendant Cagle was allowed to resign in disgrace. Defendant Mendoza, who should have already been properly trained by Defendant City, was placed on unpaid leave and assigned remedial training on the areas of the law related to this incident. That afternoon, Defendant City released a press release on their Facebook page informing the public of these actions. Defendant City also claimed that they were consulting with the District Attorney's office on potential criminal charges.

62. Defendant City's claims are diminished by a closer inspection of the press release. Defendant Cagle attacked Plaintiff, injuring him, without more provocation than a verbal disagreement about the law. Defendant City ignores this clear excessive force, claiming that "[t]heir [officers'] actions were based on an erroneous understanding of law, which resulted in an arrest of a citizen who was legally videotaping a nearby traffic accident." While Defendant City admits that Plaintiff was unlawfully arrested, no mention is given to the physical violence Plaintiff suffered before the arrest, nor, per the press release, is Defendant Mendoza scheduled for re-training in de-escalation policies. Defendant City also gives no indication whether they intend to retrain the rest of their officers—who may have also received inadequate training on citizens' constitutional rights or on de-escalation policies—on these issues.

63. Plaintiff suffered abrasions on his face and head and a deep cut to his knee from the concrete curb. Plaintiff, fortunately, narrowly missed hitting his head on the concrete curb when Defendants Cagle and Mendoza brought him to the ground, but the day after the incident, Plaintiff noticed a dull pain in his back.

64. As of this writing, Plaintiff is undergoing medical treatment for his physical and emotional injuries.

65. Plaintiff's back and knee pain started to subside but still causes discomfort. Unfortunately, Plaintiff now struggles with stress, anxiety, and depression. He can hardly sleep at night, and, when he wakes up, he cannot fall back asleep. His mind keeps taking him back to Defendant Cagle's and Mendoza's assault and how Defendant Cagle nearly suffocated Plaintiff.

66. Plaintiff had his constitutional rights to free speech and the freedom of the press violated by Defendant City and its police officers. When Plaintiff tried to stand firm against their tyranny, Defendants Cagle and Mendoza assaulted him and then falsely arrested him. When Defendant City's supervisor arrived on scene with back-up, Defendant Cagle prevaricated, trying to hide his clear violations of Plaintiff's constitutional rights. Defendant City's police officers did not perform any on-scene investigation into the violence Defendants Cagle and Mendoza used against Plaintiff. Defendant City's police officers also ranked Defendant Cagle's minor injury as being more important than the recently-assaulted Plaintiff's—even though both individuals are citizens with equal rights under the Constitution. Defendant City did not take any action to discipline Defendants Cagle and Mendoza until public furor forced a response. Even now, Defendant City, who previously admitted that Defendant Mendoza lacked proper training, gave no indication that it intended to ensure any of the rest of its officers, who may have also received inadequate training, are properly trained on the Constitution.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment – Retaliation for Protected Conduct)

67. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

68. At all times relevant, Defendants Cagle and Mendoza were acting under color of State law.

69. Plaintiff has a First Amendment right to photograph and film police activity from public spaces. This is a clearly established right that Defendants Cagle and Mendoza were either untrained on or did not care about.

70. In retaliation for engaging in protected conduct, Defendants Cagle and Mendoza targeted Plaintiff subjecting him to unlawful detainment, excessive force, and arrest without any lawful or other legitimate basis. Defendants Cagle and Mendoza also seized Plaintiff's phone, wallet, and hat.

71. Defendants' conduct was done in retaliation for Plaintiff's participation in constitutionally protected activity.

72. At all relevant times, Defendants Cagle and Mendoza were required to obey the laws of the United States.

73. Defendant Cagle's and Mendoza's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

74. Defendant Cagle's and Mendoza's adverse actions were substantially motivated by Plaintiff's conduct of lawfully photographing and filming police activity from public spaces.

75. Defendants Cagle and Mendoza intentionally, knowingly, maliciously, reckless, unreasonably, and grossly negligently retaliated against Plaintiff for engaging in protected conduct.

76. As a direct and proximate result of Defendant Cagle's and Mendoza's unlawful actions, Plaintiff was harmed.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Arrest/Detainment)

77. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

78. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

79. Defendants Cagle and Mendoza, at all relevant times, acted under the color of law.

80. Defendants Cagle and Mendoza willfully detained or arrested Plaintiff by stopping him from photographing or filming police activity from a public space, demanding that he leave, and then tackling him, assaulting him, and sitting on him to restrict his airway, before placing him in handcuffs.

81. Defendants Cagle and Mendoza knew that they were without lawful authority to detain or arrest Plaintiff as he was not violating any law or committing any crime.

82. Defendants Cagle and Mendoza did not have reasonable suspicion or probable cause to detain or arrest Plaintiff. No reasonable officer could have believed there existed reasonable suspicion or probable cause to detain or arrest Plaintiff.

83. Defendants Cagle and Mendoza did not prepare any arrest reports or make any recommendation for prosecution.

84. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourth Amendment – Excessive Force)**

85. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

86. At all times relevant herein, Defendants Cagle and Mendoza were acting under the color of State law.

87. Defendants Cagle and Mendoza, while acting within the scope of their employment with the City of Lake Jackson Police Department, and under the color of law, tackled and assaulted Plaintiff for no lawful reason.

88. Plaintiff sustained head and back injuries because of Defendants' conduct. Plaintiff is still seeking treatment for his injuries.

89. Defendant Cagle positioned Plaintiff with Plaintiff's stomach on the raised curb between the grass and road, and then straddled Plaintiff. Plaintiff, obviously distressed, complained that he could not breathe, but Defendant Cagle continued to apply pressure on Plaintiff's back and chest areas further restricting Plaintiff's ability to breathe.

90. Defendants Cagle and Mendoza violated Plaintiff's right to be free from excessive force when Defendants forcefully and intentionally tackled, hit, and otherwise assaulted Plaintiff.

91. Defendant Cagle's and Mendoza's conduct caused Plaintiff's injuries.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourth Amendment – Unlawful Search/Seizure)**

92. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

93. At all times relevant herein, Defendants Cagle and Mendoza were acting under the color of State law.

94. Defendants Cagle and Mendoza, while acting within the scope of their employment with the City of Lake Jackson Police Department, and under the color of law, created meaningful interference with Plaintiff's possessory interests in his property.

95. Defendants Cagle and Mendoza searched Plaintiff, seized his wallet, phone, and hat without any lawful basis to do so.

96. Plaintiff was harmed as a result of Defendants' unlawful seizure.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourteenth Amendment – Failure to Provide Medical Care)

97. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

98. At all times relevant herein, Defendants were acting under the color of State law.

99. The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured in their custody.

100. Defendants Cagle, Mendoza, and John Doe knew that Plaintiff sustained head and back injuries that required immediate medical attention.

101. Defendants Cagle, Mendoza, and John Doe knowingly failed to provide or get immediate, necessary medical care for Plaintiff's serious medical need in deliberate indifference to the risk of serious harm to Plaintiff.

102. Defendants provided the only ambulance to Defendant Cagle who complained of a finger injury. Defendants treated Cagle's finger injury as an injury that required more attention than Plaintiff who complained of breathing difficulties and was bleeding from his head and arms.

103. After unnecessary delay, Defendants eventually transported Plaintiff to the hospital in the back of police car.

104. Plaintiff suffered injuries because of the Defendant Cagle's and Mendoza's excessive and brutal use of force. Following this assault, Defendants refused to provide Plaintiff with immediate necessary medical care.

105. Plaintiff's resulting harm was a direct consequence of Defendants' failure to provide necessary and immediate medical care to Plaintiff.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourteenth Amendment – Failure to Intervene)

106. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

107. At all times relevant herein, Defendants were acting under the color of State law.

108. Defendant Mendoza observed Defendant Cagle engage in unlawful conduct and violate Plaintiff's constitutional rights. Rather than intervene or prevent the harm from occurring, in joined Defendant Cagle in assaulting Plaintiff.

109. Defendant John Doe observed Defendant Cagle unlawfully arrest Plaintiff and then sit on Plaintiff and restrict his breathing. Defendant John Doe knew that Plaintiff did not commit any crime but did not prevent Defendant Cagle from violating Plaintiff's constitutional rights or intervene to stop the violations.

110. Defendants had the opportunity and the means to prevent harm from occurring.

111. Defendants either joined in committing violations or stood by and let the harm unfold.

112. Defendants Mendoza and John Doe had ample opportunity and time to intervene.

113. At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

114. At all times relevant, Defendants Mendoza and John Doe intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use

excessive force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

115. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## *MONELL* Liability – Failure to Train or Supervise

116. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

117. Defendant John Doe was, at all times relevant, a City of Lake Jackson police officer and supervisor of Defendants Cagle and Mendoza.

118. Defendant City failed to train or supervise Defendant Officers on a citizen's right to film police activity in public spaces.

119. Defendant City failed to train or supervise Defendants Officers on de-escalation procedures.

120. Defendant City failed to train or supervise Defendant Officers on how to make an arrest using only the level of force necessary.

121. Defendant City failed to train or supervise Defendant Officers on rendering medical aid.

122. Defendant City failed to train or supervise Defendant Officers on intervening when police officers clearly violate a citizen's constitutional rights.

123. Defendant City has a policy of hiring patrol officers with a principal responsibility of "Investigat[ing] suspicious conditions and complaints and make arrests of persons who violate laws and ordinances."[1] Whether a person violated a law or ordinance was within Defendants

---

[1] Defendant City's duty description for a City of Lake Jackson Patrol Officer is attached as **Exhibit A**.

Cagle's and Mendoza's discretion "and interpretation of these laws."[2] Pursuant to this policy, Defendants Cagle and Mendoza were not properly trained or supervised on what the law was concerning a citizen's right to film police activity. The duty description omits any community caretaking function or requirement.

124. Accordingly, Defendants Cagle and Mendoza lacked training to determine whether Plaintiff was breaking the law. Based on an assumption that he was, Defendants Cagle and Mendoza detained Plaintiff before assaulting and arresting him.

125. Defendant John Doe was on scene and did nothing to prevent the constitutional violations and failed to train or supervise Defendants Cagle and Mendoza.

126. The City of Lake Jackson issued a news release on March 4, 2022, stating in part that Defendants Cagle and Mendoza acted "based on an erroneous understanding of law, which resulted in an arrest of a citizen who was legally videotaping a nearby traffic incident."

127. Defendant City is liable under 42 U.S.C. § 1983 if the supervisor failed to train or supervise the officers involved, there is a casual connection between the alleged failure to supervise or train and the alleged violation, and the failure to train or supervise constituted deliberate indifference.

128. Had Defendants Cagle and Mendoza been properly trained in a citizen's right to photograph and film police activity, and how to interact with citizens engaging in protected activity such as photographing police activity, Defendants Cagle and Mendoza would have never had any reason to detain Plaintiff, assault Plaintiff, arrest Plaintiff, and then maintain custody of Plaintiff for an unreasonable period.

---

[2] **Exhibit A.**

129. Defendant City's training was so inadequate or nonexistent that it should have predicted that an untrained officer would have acted in a way that Defendants Cagle and Mendoza did.

130. This is obvious in that several officers interacted with Defendants and Plaintiff following Plaintiff's arrest. Not a single officer immediately questioned Defendant Cagle's and Mendoza's conduct. None of these officers questioned whether Plaintiff's rights were being violated or whether he even committed a crime.

131. Defendant City's police officers were clearly untrained in recognizing and protecting a citizen's constitutional rights to photograph or film police activity.

132. The failure of Defendant John Doe and Defendant City to train or supervise Defendants Cagle and Mendoza demonstrates deliberate indifference to the constitutional rights of the Plaintiff.

133. Defendant City is directly responsible for the individual Defendants' conduct described herein.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment and prays for the following relief against Defendants:

    a. Full and fair compensatory damages in an amount to be determined by a jury;

    b. Nominal Damages for retaliation by Defendants for Plaintiff's exercise of his First Amendment rights, as the Court finds appropriate, from one or more Defendants;

    c. Punitive damages from one or more Defendants to be determined by a jury;

    d. Pre-judgment and post-judgment interest from one or more Defendants;

    e. Reasonable attorney's fees and costs of this action; and

    f. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

                                           Respectfully submitted,

                                           **GRABLE GRIMSHAW PLLC**

                                           */s/ Brandon J. Grable*
                                           **BRANDON J. GRABLE**
                                           Texas State Bar No. 24086983
                                           SDTX Bar No. 3246103
                                           brandon@g2.law
                                           1603 Babcock Road, Suite 280
                                           San Antonio, Texas 78229
                                           Telephone: (210) 963-5297
                                           Facsimile: (210) 641-3332
                                           ***Counsel for Plaintiff***