**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **ROLANDO REYES, JR.,** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **vs.** | § | **Case No.: 3:22-cv-114** |
| | § | |
| **JOHNNY CAGLE, OFFICER O.** | § | |
| **MENDOZA, OFFICER JOHN DOE** | § | |
| **and CITY OF LAKE JACKSON** | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS,**
**AND PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

TO THE HONORABLE COURT:

Plaintiff **ROLANDO REYES JR.** ("Plaintiff") files this *Plaintiff's Motion to Strike and Plaintiff's Response to Defendants' Motion to Dismiss* to thoroughly respond and address each point raised in *Defendants' Motion to Dismiss* filed by Defendants **CITY OF LAKE JACKSON** and **JOHN DOE** (collectively, "Defendants") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 7.

## I.     STATEMENT OF ISSUES PRESENTED

1.     Whether Defendants' Motion to Dismiss should be struck, in its entirety, or in part for failing to follow local rules and for attempting to present conclusory statements rather than assert that Plaintiff's pleadings are not sufficient.

---

2.     Whether Plaintiff alleged sufficient facts to state a claim against a Defendant Supervisor for failing to provide medical care (Count V), for failing to intervene (Count VI), and for supervisory liability (Count VII) where Defendant Supervisor observed his officers use excessive force and unlawfully arrest and injure a law-abiding citizen and did nothing about it.

## II.     STATEMENT OF LEGAL AUTHORITIES PRESENTED

Defendants are not entitled to dismissal because the "[t]he pleadings on their face show an unreasonable violation of a clearly establish constitutional right, [and therefore] the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002).

The sufficiency of Plaintiff's pleadings is governed by FED. R. CIV. P. 8(a)(2) and FED. R. CIV. P. 12(b)(6).

Authority for making a Section 1983 claim for failure to intervene when "an officer who is present at the scene and does not take reasonable measure to protect a suspect from another officer's use of force" can be found in *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Authority for making a Section 1983 claim for failure to provide medical care is found at *Kelson v. Clark*, 1 F.4th 411, 418 (U.S. 5th Cir. 2021) (citing *Hare v. City*

*of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996), *Thompson v. Upshur Cty.*, 245 F.3d

447, 457 (5th Cir. 2001), and *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).

Authority for making a Section 1983 claim for supervisory liability can be

found in *Gates v. Tex. Dep't of Protective &Regulatory Servs.*, 537 F.3d 404, 435

(5th Cir. 2008).

Authority for a Section 1983 claim against a municipality for its failure to

train its officers can be found in *World Wide St. Preachers Fellowship v. Town of*

*Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

### III.   MOTION TO STRIKE

#### A.   Failure to Comply with Local Rules

Counsel for Defendants failed to comply with Rule 6 of the *Galveston*

*District Court Rules of Practice*, which states, in part:

> To advance the case efficiently and minimize the costs of litigation, the
> court requires a party intending to file a motion to dismiss under Rule
> 12(b) to confer with opposing counsel concerning the expected
> motion's basis. The party seeking dismissal shall further inform the
> respondent, by letter, of the right to amend the pleadings under these
> procedures, specifying that the amended pleading must be filed within
> 14 days of the date of the letter. If the pleading is not so amended, the
> motion to dismiss may be filed. In such a case: (1) a certificate of
> conference shall accompany the motion to dismiss expressly stating
> that the movant has complied with this rule and noting that the non-
> movant did not timely amend its pleading; and (2) the non-movant shall
> not be allowed to amend its pleading unless the non-movant's case
> survives the motion and the non-movant obtains leave to amend from
> the court.

Defendants' counsel failed to: (1) confer with Plaintiff's counsel about Defendant's 12(b)(6) motion; (2) send a letter to Plaintiff's counsel; or (3) include a certificate of conference stating that Defendants complied with the Rule.  For these reasons, Defendants' motion should be struck in its entirety.

**B.    Defendants Improperly Assert Their Own Conclusory Facts in Attempt to Prevail on a 12(b)(6) Motion to Dismiss**

Defendants assert that "Supervisor (John Doe)[1] . . . arrived on the scene after the arrest."  *See* Dkt. No. 7, ¶ 1.  Defendants also state that Plaintiff's arrest arose from "his potential violation of Texas Penal Code § 38.13 and/or § 38.15."  *See* Dkt. No. 7, ¶ 4.   These conclusory statements are without evidence and improper assertions that are inconsistent with Plaintiff's pleadings.  Therefore, paragraphs 1 and 4 of Defendants' Motion to Dismiss should be struck, or in the alternative, not considered by this Court for purposes of evaluating whether Defendants can succeed under Rule 12(b)(6).

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted)).

---

[1] Interestingly, Defendants refuse to disclose Supervisor John Doe's identity, but go on to make conclusory statements about when he was present.

Plaintiff clearly asserted that "Defendant John Doe observed Defendant Cagle unlawfully arrest Plaintiff and then sit on Plaintiff and restrict his breathing." *See* Dkt. No. 1, ¶ 109. Plaintiff explicitly pled that Defendant Doe "had ample opportunity and time to intervene." *See* Dkt. No. 1, ¶ 112. Plaintiff also sufficiently stated that "Defendant John Does was on scene and did nothing to prevent the constitutional violations." *See* Dkt. No. 1, ¶ 125.

## IV.   RESPONSE TO DEFENDANTS' MOTION TO DISMISS

### A.   Standard of Review

All that is required under the Federal Rules of Civil Procedure is for Plaintiff to plead "a short and plain statement of the claim showing that [he is ] entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary." *Inhale, Inc. v. Gravitron, LLC*, 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007))

In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiff and assumes that all facts in Plaintiff's complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Finally, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

**B.      Defendant Doe is Not Entitled to Qualified Immunity Because His Conduct as Alleged Violated Plaintiff's Clearly Established Rights**

Qualified immunity "is an affirmative defense which must be established by the defendant*." Teladoc, Inc. v. Tex. Med. Bd*., 2015 U.S. Dist. LEXIS 166754, at *18-19 (W.D. Tex. Dec. 14, 2015) (collecting cases).  Defendants simply assert (in a conclusory fashion) that since "Supervisor John Doe was not on the scene at the time of Reyes' arrest it is unclear what clearly established constitutional right was violated by John Doe." *See* Dkt. No. 7, ¶ 5.  Importantly, Defendants' position fails simply because Plaintiff alleged that Supervisor John Doe was on the scene at the time of Plaintiff's arrest.  For this reason, Defendants failed to establish qualified immunity.

"A public official is entitled to qualified immunity unless a plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Gerhart v. McLendon*, 714 F. Appx. 327, 333 (5th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

1. *Constitutional Violation – Failure to Provide Medical Care (Count V)*[2]

"After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to

_____

[2] Defendants' Motion to Dismiss does not mention or address Defendant Doe's failure to provide medical care. *See generally* Dkt. No. 7.

medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

Defendants do not dispute that Plaintiff was a pretrial detainee. "[T]he law was clearly established that pretrial detainees have a Fourteenth Amendment right to medical care." *Kelson*, 1 F.4th at 421 (citing *Hare*, 74 F.3d at 645; *Thompson*, 245 F.3d at 457; *Dyer*, 964 F.3d at 380; and *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393-94 (5th Cir. 2000)).

Here, Plaintiff's Complaint sufficiently states a claim against Defendant Doe for refusing to provide medical care. Plaintiff alleges that Defendant Doe knew that Plaintiff sustained head and back injuries, was bleeding from his head and arms, and that these injuries required immediate medical attention, but Doe knowingly failed to provide immediate and necessary medical care. *See* Dkt. No. 1, ¶¶ 100-102.

Critically, Defendants do not dispute whether Plaintiff could demonstrate a violation of his constitutional rights by showing that Defendant Doe "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Kelson*, 1 F.4th at 421 (internal citations omitted).

Plaintiff has sufficiently alleged a claim against Defendant Doe for deliberately failing to provide medical care.

### 2. *Constitutional Violation – Failure to Intervene (Count VI)*[3]

Under the Fifth Circuit's clearly-established bystander liability doctrine, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of force may be liable under section 1983." *Hale*, 45 F.3d at 919. "To prove bystander liability, the plaintiff must show 'the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" McDonald v. McClelland, 779 F. App'x 222, 226 (5th Cir. 2019) (quoting *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013)).

Here, Plaintiff properly alleges that Defendant Doe observed another officer unlawfully arrest and assault Plaintiff even though Plaintiff was not committing any crime. *See* Dkt. No. 1, ¶¶ 109-115. Defendants simply assert that Defendant Doe was not present, but that is not relevant for this Court's inquiry for purposes of Rule 12(b)(6). Plaintiff properly alleged that Doe was in fact present, knew another officer was violating Plaintiff's constitutional rights, and despite having ample time and opportunity to do so, failed to intervene.

### 3. *Supervisory Liability (Count VII)*

Defendants are correct that supervisors cannot be held vicariously liable under

---

[3] Defendants' Motion to Dismiss does not mention or address Defendant Doe's failure to intervene. *See generally* Dkt. No. 7.

Section 1983 for the conduct of others. *Estate of Davis ex rel. v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  However, a supervisor can be liable for his own conduct that violated a plaintiff's constitutional rights. *Id.*

Defendants are correct that Plaintiff did not state "a claim of conduct that John Doe actually committed that violated Reyes' clearly established constitutional right to be free from arrest." *See* Dkt. No. 7, ¶ 4.  However, what Defendants omit or do not discuss is that Plaintiff alleges that Doe engaged in other conduct.  Namely, Doe engaged in conduct of violating Reyes' clearly established constitutional rights to be provided with immediate and necessary medical treatment, and that Doe was required to intervene and stop the gross constitutional violations of other officers from continuing.

Plaintiff has sufficiently alleged a bystander liability claim against Defendant Doe for deliberately failing to provide medical care and for failing to intervene.

### 4.  *Qualified Immunity – Clearly Established Law*

Defendant Doe is not entitled to qualified immunity for his conduct alleged because he violated Plaintiff's clearly established constitutional rights to be entitled to proper medical care as a pretrial detainee, and that Doe would intervene and would prevent further harm from other officers' constitutional violations.  "In the context of a motion to dismiss, 'if the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will

not sustain a motion to dismiss under Rule 12(b)(6).'" *Morales v. Gomez*, No. EP-14-CV-00189-DCG, 2014 U.S. Dist. LEXIS 202305, at \*9 (W.D. Tex. Nov. 7, 2014) (quoting *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002)).  As discussed herein, Plaintiff alleged sufficient facts to support his claims against Officer Doe, so Officer Doe is not entitled to dismissal.

"In order for a right to be 'clearly established,' the relevant legal authorities must give the officer 'fair warning' that his or her conduct was unlawful." *Gerhart v. McLendo*n, 714 Fed. Appx. 327, 333 (5th Cir. 2017) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002)).  "Although the right cannot be defined too abstractly, the Supreme Court has rejected any requirement that the facts of prior cases be 'fundamentally' or 'materially' similar." *Id*.  "Thus, officials can still be on notice that their conduct violates established law even in novel factual circumstances.  The key question is not whether there is a case directly on point, but whether a reasonable officer would understand that his or her conduct was unlawful." *Id*. (citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (internal citation omitted).

The court "need not immunize an officer from suit for an obvious violation simply because no case has held that the officer's precise conduct was unlawful." *Id*. at 334-335.  Where there is an absence of controlling authority, "a consensus of cases of persuasive authority" can be "sufficient to compel the conclusion that no

reasonable officer could have believed that his or her actions were unlawful. Case law need not be directly on point, though it should be close, and if the conduct is particularly outrageous, the caselaw putting the officer on notice can be more general in character." *Graves v. Zachary*, 277 Fed. Appx. 344, 348 n.4 (5th Cir. 2008) (citing *McClendon v. City of Columbia*, 305 F.3d 214, 329 (5th Cir. 2002) and *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) ("We recognize that in order to preclude qualified immunity it is not necessary that the very action in question has previously been held unlawful, or that the plaintiff point to a previous case that differs only trivially from his case. However, the facts of the previous case do need to be materially similar. We also recognize that the egregiousness and outrageousness of certain conduct may suffice to obviously locate it within the area proscribed by a more general constitutional rule . . . .").

As described above, Defendant Doe is alleged to have committed constitutional violations that were clearly established.

## C. Plaintiff Properly Asserted a Failure to Train *Monell* Claim Against Defendant City

"A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). Such "failure to train" claims can prevail where plaintiff establishes that: "(1) the [official] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or

train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

### 1. *Failure to Train*

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Here—even if the Court were to defer to Defendants' conclusory allegations—Defendants Cagle and Mendoza were sent to investigate a motor vehicle collision and respond to *crowd control*. *See* Dkt. No. 7, ¶ 3. (emphasis added).

The most basic function of crowd control requires that officers be aware of the constitutional rights the "crowd." Without such knowledge, no officer could be expected to manage such a crowd without potentially violating some their rights, which is exactly what happened to Mr. Reyes. It is uncontested that officer Cagle was clearly unaware of plaintiff's free speech rights. *See* Dkt. No. 1, ¶¶ 61-62. Officer Mendoza's knowledge of the applicable law was also clearly inadequate as he did nothing to correct Cagle's incorrect statements. *See* Dkt. No. 1, ¶ 62.

Further, several other officers from Defendant City's police department were on the scene, but none of them did anything to stop the continued violations. *See* Dkt. No. 1, ¶ 46. Officer Doe, the supervisor on the scene, continued to keep

Plaintiff in custody which resulted in him being handcuffed to the hospital bed for hours (when he finally received medical attention). *See* Dkt. No. 1, ¶¶ 57, 59. It was not until plaintiff had already been unlawfully detained for several hours that a call came through directing plaintiff to be removed from his handcuffs. *See* Dkt. No. 1, ¶¶ 58-59. This is clear evidence that Defendant City failed to train its officers or supervisors on what their citizens' rights to free speech were.

2. *Casual Connection*

The casual connection between the failure to train and the violation of Plaintiff's rights is clear and absolute. Had any of the officers on the scene been properly trained as to a citizen's First Amendment rights for filming in a public space, then they never would have engaged Plaintiff in the first place and no unlawful detention, arrest, and assault would have occurred.

Under some circumstances, "predicting how a hypothetically well-trained officer would have acted may not be an easy task for the fact finder." *Canton*, 489 U.S. at 391. That is not the case in this situation. A factfinder would easily be able to infer, based on Plaintiff's sufficiently pled complaint, that a well-trained officer would have simply recognized that Plaintiff was engaging in a constitutionally protected activity and thus would have left him alone. There is realistically no plausible alternate cause for the injuries sustained to plaintiff except for Defendant City's failure to train its officers.

### 3. *Deliberate Indifference*

Deliberate indifference may be shown in two ways. *Littell v. Houston Indep Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018). Generally, a plaintiff shows deliberate indifference by demonstrating a pattern of similar violations arising from inadequate training. *Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A pattern of similar violations helps to establish that "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *World Wide St. Preachers Fellowship*, 591 F.3d at 754.

Here, Plaintiff's rights were violated initially by officer Cagle who demanded that he cease engaging in a lawful activity of collecting news. *See* Dkt. No. 1, ¶¶ 26-30, 35. Officer Mendoza then violated his rights by assisting officer Cagle in plaintiff's unlawful arrest. *See* Dkt. No. 1, ¶¶ 37-38. Officer Doe, then allowed Plaintiff's unlawful detainment to continue for several hours after being informed of the facts relevant to the situation. *See* Dkt. No. 1, ¶¶ 41-48, 59. Several other police officers were at the scene, and none of them did anything to redress the violations suffered by Plaintiff. *See* Dkt. No. 1, ¶ 130. Such indifference or incompetence from Defendant City's several police officers certainly infers that the indifference to Plaintiff's constitutional rights was a widespread, persistent practice of the City's

police force.

But even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Bd. Of Cty. Comm'rs v. Brown,* 520 U.S. 397, 409 (1997) (construing *Canton*, 489 U.S. at 390 & n.10). That is, a single incident may be sufficient to show deliberate indifference where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train. *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003) (citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000)). The Supreme Court in *Canton* gave a hypothetical for such a situation:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so obvious" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Canton*, 489 U.S. at 390 n.10 (majority opinion). Under those circumstances, the need for training is clear because without training, there would be no way for novice officers to obtain the legal knowledge they require to carry out their clear and recurring constitutional obligations. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d

616, 625 (5th Cir. 2018).

The Fifth Circuit outlined how a single incident can be sufficient to fasten liability on a municipality in *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616 (5th Cir. 2018).  In *Littell*, a school police officer authorized several middle school girls to be strip searched after $50 went missing in a choir class.  *Littell*, 894 F.3d at 620. Relying on *Canton*, the Fifth Circuit held that this one instance of a constitutional violation was sufficient to plausibly allege deliberate indifference by the school.  *Id.* at 629.

The allegations in *Littell*, like the allegations here, mirror *Canton's* hypothetical in all material respects.   The *Canton* hypothetical discusses the constitutional duty not to use excessive force when conducting arrests, while *Littell* addresses the constitutional duty not to conduct unreasonable searches.  *Id*.  The *Canton* hypothetical makes clear that excessive force law is sufficiently clear to ground failure-to-train liability, and because the duties with respect to searches are arguably defined with greater specificity, then it too is sufficiently clear to ground failure to train liability.  *Id.* at 626.

A citizen's right to gather news by way of recording is arguably even more clearly defined than either of the previous two examples.  *See Turner v. Driver*, 848 F.3d 687, 688 (5th Cir. 2017) ("The First Amendment protects freedom of speech and freedom of the press.  But the First Amendment goes beyond protection of the

press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. . . . [T]here is an undoubted right to gather news from any source by means within the law." (internal quotations omitted)).

Clearly, Plaintiff's First Amendment right is sufficiently clear to ground failure-to-train liability as described in *Canton*.

Further, as in *Canton* and *Littell*, the constitutional duty not to interfere with citizens' rights to record is likely to arise "in recurrent situations that a particular employee is certain to face." *Littell*, 894 F.3d at 626. Given the fact that most Americans own a phone capable of recording, it is almost impossible to think that a police officer will not encounter a citizen who is exercising this First Amendment right.

In 2017 the Fifth Circuit joined all other Circuits that have ruled on the issue, in holding that the right to record police officers performing their duties in public places is well within the protections of the First Amendment. *Turner*, 848 F.3d at 689.

This holding makes it clear that officers and police departments needed to be trained and ready to recognize a citizen's rights that may be filming police officers performing government functions in public—even if the officers find it irritating.

Here, Plaintiff was engaged in a clearly established constitutional right to

photograph and film police performing their duties in a public space. This was a situation that Defendant City could have anticipated—that its officers would be filmed or photographed. Defendant City was required to provide this training to officers—especially those officers engaged in crowd control. However, that was not the case.

Neither Officers Mendoza, Cagle, any other officer on scene, or their supervising officer Defendant Doe, was properly informed or trained on Plaintiff's right to film or record police activity. Had they been, Plaintiff would not have been detained, assaulted, or injured. In the least, Plaintiff would have been saved from further injury by Officer Doe had Officer Doe complied with his obligation to intervene.

Given the inevitability that their officers would be put in a situation where they were required to perform their functions while citizens recorded them, Defendant City knew that not training on these situations would almost surely lead to constitutional violations. Defendant City failing to provide this training is the kind of deliberate indifference which creates municipal liability for **Section** 1983 failure-to-train claims.

Defendants contend "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on a municipality, for the officer's shortcomings may result from factors other than a faulty training program." *See* Dkt.

No. 7, ¶ 3 (citing *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)).  This is neither an accurate statement of the law nor is it directly applicable to the facts of the case at bar.

As noted above, the Supreme Court and Fifth Circuit have outlined several scenarios in which one officer's conduct is sufficient to fasten liability on a municipality.  *See City of Canton v. Harris*, 489 U.S. 378 (1989) (decided four years after *Oklahoma City v. Tuttle*); *Brown v. Bryan County*, 219 F. 3d 450 (5th Cir. 2000); *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616 (5th Cir. 2018).

The *Oklahoma City v. Tuttle* case concerned a single incident by a single nonpolicymaking officer.  *Tuttle*, 471 U.S. at 824.  Plaintiff's allegations are of a different nature as this concerned several officers.   Neither Officers Cagle nor Mendoza were aware of Plaintiff's constitutional right to record from a public walkway.  Further, several other officers were on scene, including officer Doe, and none of them did anything to redress the violations that had already occurred.  Rather, each of the officers were complicate in allowing the violation to continue— because of Defendant City's failure to train and deliberate indifference.

## D. Plaintiff Does Not Seek Punitive Damages Against the City of Lake Jackson

Defendants move to dismiss the punitive damages claim with respect to the City of Lake Jackson only.  Plaintiffs are not seeking punitive damages against the City of Lake Jackson, but rather seeking punitive damages from the individual

defendants in this matter.

## V.    CONCLUSION

For the reasons stated herein, and where Defendants City of Lake Jackson and John Doe have only moved to dismiss Count VII (and possibly Counts V and VI against Doe), Plaintiffs respectfully requests this Honorable Court deny Defendant Officers' motion to dismiss.  In the alternative, if this Court finds any pleading-related issues in Plaintiffs' complaint, Plaintiffs respectfully request this Court grant an opportunity to amend.  Plaintiff further requests that this Court strike Defendants' Motion to Dismiss in its entirety, or in part, as put forth above, or in the alternative, that the Court disregard the conclusory statements made by Defendants in their motion.  Plaintiff requests all other relief to which he may be entitled in law or equity.

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby affirm that on this 13th day of June 2022, the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*