**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

|  |  |  |
|---|---|---|
| **ROLANDO REYES, JR.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Case No.: 3:22-cv-114** |
| | § | **JURY** |
| **JOHNNY CAGLE, OFFICER O.** | § | |
| **MENDOZA, OFFICER JOHN** | § | |
| **DOE and CITY OF LAKE** | § | |
| **JACKSON** | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

---

TO THE HONORABLE JEFFREY VINCENT BROWN, U.S. DISTRICT JUDGE:

Plaintiff **ROLANDO REYES, JR.**, by and through his attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this *Plaintiff's Second Amended Complaint*, as permitted by the Docket Control Order at Dkt. No. 21, complaining of Defendants **CITY OF LAKE JACKSON**, **JOHNNY CAGLE**, and **OSCAR MENDOZA**, and respectfully alleges as follows:

## INTRODUCTION

1.      ROLANDO REYES, JR., a law-abiding citizen, brings this civil action for damages against the CITY OF LAKE JACKSON (and more specifically, the CITY OF LAKE JACKSON POLICE DEPARTMENT), former City of Lake Jackson police officer JOHNNY CAGLE, and City of Lake Jackson police officer

OSCAR MENDOZA.  Defendants Cagle and Mendoza detained, assaulted, and arrested Plaintiff because he was photographing or filming police activity in public, a constitutionally protected activity.  Supervisors arrived on the scene, learned that Defendant Cagle assaulted Plaintiff for taking pictures and video of officers performing their public duties, but determined they were going to arrest and charge Plaintiff even though he committed no crime.  Had these officers been properly trained, they would have recognized they lacked any constitutional basis to keep Plaintiff in handcuffs.

2.      Plaintiff alleges that the CITY OF LAKE JACKSON, and its policy makers, City Manager MODESTO MUNDO ("Mundo"), Chief of Police PAUL KIBODEAUX ("Kibodeaux"), the Lake Jackson City Council, and Mayor of Lake Jackson, JOE E. RINEHART ("Rinehart") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force against those engaged in constitutionally protected activity, including those officers repeatedly accused of such acts.  The Policymakers, specifically City Manager Mundo, along with Chief of Police Kibodeaux, had a duty, but failed to implement and/or enforce policies, practices, and procedures for the Lake Jackson Police Department that respected Reyes 'constitutional rights.  This duty was delegated to the Lake Jackson City

Council who hired City Manager Mundo to carry out the actions and policies of the council by overseeing the day-to-day operation of the City of Lake Jackson. Defendant City of Lake Jackson and its Policymakers, specifically City Manager Mundo and Chief of Police Kibodeaux, failed to implement the necessary policies that protected individuals engaged in constitutionally protected activities such as filming police performing duties in public, and the failure to implement these policies deprived Reyes of his rights under the Constitution, which caused him unwarranted and excruciating physical and mental anguish.  The City of Lake Jackson's failure to train and supervise its officers on the constitutional rights of citizens was entirely predictable and these failures resulted in Plaintiff being assaulted, sustaining head, back, and psychological injuries, and for being unreasonably detained and unlawfully arrested.  Plaintiff was harmed and seeks recovery in this lawsuit.

## **JURISDICTION AND VENUE**

3.      This is a civil rights action in which the Plaintiff seeks relief for the violations of his rights secured by 42 U.S.C. § 1983 and the First and Fourth Amendments.

4.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

5.      Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

6.     The events that gave rise to this lawsuit took place next to the parking lot exit for Brazos Mall, at 104 State Highway 288 located in Lake Jackson, Texas, in Brazoria County.

## **PARTIES**

7.     Plaintiff ROLANDO REYES, JR, ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of Angleton, County of Brazoria, State of Texas.

8.     Defendant CITY OF LAKE JACKSON ("Defendant City") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action. Defendant is responsible for the policies, practices, and procedures of its Police Department and individual officers.

9.     Defendant OFFICER JOHNNY CAGLE ("Defendant Cagle") was at all pertinent times a police officer employed by the City of Lake Jackson and was at all pertinent times acting under color of state law in performance of his duties as a Lake Jackson police officer.

10.    Defendant OFFICER OSCAR MENDOZA ("Defendant Mendoza") was at all pertinent times a police officer employed by the City of Lake Jackson and was at all pertinent times acting under color of state law in performance of his duties as a Lake Jackson police officer.

11.   Each and all the acts of Defendant Officers alleged herein were committed by said Officers while acting within the scope of their employment with the Defendant City's Police Department.

12.   Each and all of the acts of Defendant Officers were committed by these Officers despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## **STATEMENT OF FACTS**

13.   This action involves a series of events following an incident that occurred on the afternoon of March 4, 2022, which are addressed herein chronologically.

14.   Plaintiff, a civic-minded member of the Lake Jackson community, believes strongly in community involvement and local awareness.  To such an end, in September of 2020 he created, and is currently the administrator for, the private Facebook page ⚠️Brazoria County News⚠️, to keep his locale apprised of current goings-on.

15.   This page is "intended to provide local news happenings from traffic accidents, events, and business news."  It also serves as a shout-out for local

businesses doing an outstanding job. As the page intends to be a reliable resource for Brazoria County residents, news posts need to include citations and official links to verify their validity. All posts need to "be kind and courteous" and focus on "news and events only"; if they are "repeat news or [are] missing details", posts may be declined. At the time of this incident, the page had over 10,000 members.

16.    After the incident at issue in this lawsuit, the City of Lake Jackson became a member of Plaintiff's news-oriented Facebook group.

17.    On March 4, 2022, at about 1:30 PM, Plaintiff and his wife were leaving the Brazos Mall, a large modern shopping center with over 50 stores. As they were leaving from the exit near Starbucks, Plaintiff saw several large tow trucks blocking the frontage road to Highway 288.

18.    Curious about what was going on, Plaintiff directed his wife to pull over and park. He then approached the scene on foot, walking on the public easement while taking pictures. Plaintiff frequently takes pictures of car accidents he sees in the Brazoria County area. If the accident looks like it may be interesting to other residents, he shares the pictures on his Facebook group.

19.    As Plaintiff approached closer, he saw that Defendants Cagle and Mendoza, dozens of feet away, handling the cleanup for a minor car accident.

20.    A woman at the scene loudly called out to the police officers asking if Plaintiff was with them. When Defendant Cagle saw Plaintiff taking photos of the

scene dozens of feet away, he began walking towards Plaintiff.

21.     When Defendant Cagle reached Plaintiff, he asked him why he was there.   Plaintiff responded that he was taking photos.   Defendant Cagle asked if Plaintiff was part of the accident scene.   Concerned about how this encounter might go, Plaintiff quickly started to record on his phone for his safety.   Plaintiff asked Defendant Cagle to repeat his questions. Plaintiff then told him again he was there to take photographs.

22.     Defendant Cagle, not satisfied with why Plaintiff, a law-abiding citizen standing in a public place, unlawfully demanded Plaintiff to leave. When Plaintiff did not immediately comply with this unlawful order, Defendant Cagle asked for Defendant Mendoza to come over.

23.     Defendant Cagle told Defendant Mendoza that Plaintiff was breaking the law by taking pictures of other people's vehicles and license plates from a public space.   Defendants Cagle and Mendoza lacked training by Defendant City to know that Plaintiff was not breaking the law through his conduct.

24.     Nevertheless, Defendants Cagle and Mendoza continued to unlawfully order Plaintiff to leave.

25.     Plaintiff, believing that Defendant City's police officers would adhere to the laws of the land, informed the officers that they were not going to stop him from taking photographs or video from a public space.

26.     Defendant Cagle asked Plaintiff if he worked for the newspaper. Plaintiff, who was photographing the scene potentially in the capacity of the press, knew he did not have to be an "official"—if such a category even exists—member of the press to have a right to disseminate information to the public.

27.     Plaintiff informed Defendant Cagle that he did not have to work for the newspaper to take public photography.  Defendant Cagle again insisted that Plaintiff was not allowed to take pictures of other people's license plates.  When Plaintiff tried to inform Defendant Cagle that this was incorrect information, Defendant Cagle ignorantly told Plaintiff that he needed to learn the law. Plaintiff tried to explain again that he is allowed to take photos in public.

28.     At this point, Defendant Cagle tried to make Plaintiff identify himself, because he was on their accident scene.  Plaintiff asked Defendant Officers to identify themselves.  After they did so, Plaintiff, as is his right, refused to identify himself.  Defendant Cagle again unlawfully ordered Plaintiff to leave.  When Plaintiff refused, Defendant Cagle radioed dispatch requesting a supervisor's presence.

29.     When Plaintiff accused Defendant Officers of coming to intimidate him to silence his constitutional rights to free speech and the freedom of the press, Officer Cagle got in Plaintiff's face arguing that Plaintiff came onto their accident scene.  Plaintiff tried again to explain the basic concept of public property and

requested that Defendant Cagle lower his voice.

30.     Defendant Cagle, in front of bystanders observing the situation, proceeded to get into an argument about Plaintiff's presence at the scene.  When Defendant Cagle again asked why Plaintiff was at the scene, Plaintiff told him that it was none of his business.  Defendant Cagle again tried to order Plaintiff to identify himself, claiming that he had now included himself in the accident. Plaintiff refused. Defendant Cagle again ordered Plaintiff to leave.

31.     When Plaintiff did not leave the scene, Defendant Cagle asked Defendant Mendoza to back him up.  Defendant Mendoza joined in questioning Plaintiff why he was there at a public space observing police officers working an accident scene.

32.     Plaintiff told Defendant Mendoza to go deal with the accident, but Defendant Mendoza informed Plaintiff that there was no longer an accident scene.

33.     Plaintiff told Defendant Officers that he did not need their permission to be present, and he requested that Defendant Officers leave him alone.  Plaintiff asked the officers to move back while pointing out that had he approached them the way they approached him, they would have arrested him.

34.     Defendant Cagle responded that Plaintiff was on their scene and interfering with their investigation—an investigation that Defendant Mendoza had already admitted was completed.

35.     Plaintiff again informed Defendant Officers that he was allowed to photograph an event occurring in the public, and that he was far enough back (dozens of feet) and out of the way to not interfere with their investigation.

36.     The following picture was taken from Plaintiff's point of view before Cagle and Mendoza approached him (Cagle is in the yellow circle):





38.     Defendant Cagle, who had already waved his finger near Plaintiff's face, ordered Plaintiff not to gesture with his finger near him. Plaintiff told Defendant Cagle, who was standing right in front of Plaintiff, that he needed to back up then. (If he was not standing very close to Plaintiff, Plaintiff's finger would not be able to intrude upon Defendant Cagle's personal space.)  Defendant Cagle again insisted that this was his and Defendant Mendoza's scene and unlawfully ordered Plaintiff to leave.  Plaintiff, who knew his rights as a citizen, refused to leave, while verbally questioning Defendant Cagle's unlawful conduct.

39.     Defendant Cagle got into Plaintiff's face, nearly chest to chest, grabbed his neck and body, and with Defendant Mendoza's assistance, tackled him to the ground while also hitting Plaintiff's phone out of his hand.

















40.     City of Lake Jackson police supervisor, Corporal Randal Ryan walked over to where Plaintiff was at, observing that Plaintiff was struggling to breathe. Corporal Ryan never handled this type of incident before, so he did not know what to do.



41.     Due to Defendants Cagle and Mendoza attacking Plaintiff in a flurry of grabs at his arms, neck, and other body parts, Plaintiff was injured.



42.     Plaintiff ended up on the ground where the grassy ditch met the concrete curb.

43.     Defendant Mendoza wrote his incident report describing an entirely different situation that is wholly inconsistent with video.  He initially stated that Plaintiff was asked to move due to his safety of being near traffic, and that he was detained for his and officer safety.  This purported dialogue did not exist.

44.     While Plaintiff's stomach was on the concrete curb, Defendant Cagle sat on Plaintiff's back with his full weight while (and after) he placed handcuffs on Plaintiff. Defendant Cagle's continued force on Plaintiff's back while pushing Plaintiff's stomach into the concrete curb distressed Plaintiff and kept him from being able to breathe properly.

45.     Several officers and first responders arriving on the scene, joined Cagle and Mendoza.  In front of these officers, Plaintiff pleaded multiple times with Defendant Cagle to get off him so that he could breathe. He also asked to be allowed to turn over.

46.     Defendant Cagle, while still sitting on Plaintiff, explained to approaching officers what had happened.  Defendant Cagle, who knew that he had no justification for his use of excessive force against Plaintiff, tried to coverup his actions; he lied and told supervisor Corporal Ryan that he had to take Plaintiff down because Plaintiff was reaching for something—implied was the insinuation that

Plaintiff was an immediate threat to Defendants Cagle and Mendoza.

47.     Defendant Mendoza failed to correct Defendant Cagle's false version of events which resulted in the unreasonable detention and false arrest of Plaintiff.

48.     While Defendant Cagle lied to officers and supervisors arriving on scene, Plaintiff tried throughout the interaction to highlight that Defendant Cagle lied, but he was ignored.  Plaintiff represented to both supervisors on scene, Ryan and Sergeant Nesrsta, that he was exercising his right to photograph a traffic accident, and that he was assaulted for no reason.

49.     The supervisors and other officers on the scene learned from Cagle and Mendoza that all Plaintiff was doing was photographing them performing public duties while verbally opposing them from unlawfully stopping his protected conduct.

50.     Defendant Cagle, who had been sitting on Plaintiff's back for close to a minute, finally stood. Plaintiff rolled over, trying to let his chest decompress.

51.     Every City of Lake Jackson police officer that responded to the scene soon had knowledge that Plaintiff was engaged in a constitutionally protected activity before Cagle and Mendoza approached Plaintiff and assaulted him. However, every officer lacked training as even the supervisors failed to act on this information, which resulted in Plaintiff being unlawfully detained and then arrested without any lawful basis.  Had these supervisors been sufficiently trained, they

would not have acted with deliberate indifference and would have immediately stopped the constitutional violations from continuing.

52.     As Cagle told his story over and over, while having more time to think about it, his version was no longer, "I took Plaintiff down because he reached for something."  It changed to accusing Plaintiff of initiating physical contact with him. Corporal Ryan heard both versions from Cagle but did not challenge it.

53.     Even when Corporal Ryan asked Officer Mendoza about the new version of events, Officer Mendoza did not collaborate it.  Mendoza did not make any mention of Plaintiff physically contacting Cagle.  Nonetheless, Officer Cagle's versions of events were accepted while Plaintiff's pleas for the truth went ignored.

54.     The inconsistency between Cagle's and Mendoza's understanding of what occurred, together with Cagle's conflicting stories, would have been a red flag to a reasonably trained officer that something was amiss.

55.     When EMS arrived at the scene, Defendant Cagle went to them to receive medical treatment asserting that he injured his finger.

56.     Meanwhile, Plaintiff still lay on the ground, highly disoriented, bleeding from multiple abrasions, and struggling to breathe.

57.     When Defendant City's Officers, acting under the supervision of Ryan and Nesrsta, asked Plaintiff if he wanted medical treatment, they made clear to him that only one ambulance was currently available and that they would be giving that

ambulance to Defendant Cagle—for his allegedly injured finger.

58.     Even though Mendoza and Cagle informed other officers that Plaintiff's head hit the concrete, that they observed him struggling to breathe, and that Cagle choked him, not a single officer or first responder, all employed by the City, checked on Plaintiff.  Cagle's finger was more important than the well-being of Plaintiff's more significant injuries.

59.     Defendant City's officers offered the bleeding, gasping Plaintiff two options: Either (1) he could wait for another ambulance to become available, or (2) they could take him to the hospital in the back of a patrol car.

60.     Plaintiff—still in handcuffs—was moved to a patrol car.  Plaintiff told the EMT that he was out of breath, his head was hurting, and his heart was racing.

61.     Sergeant Nesrsta approached the patrol car where Plaintiff was waiting.  While Sergeant Nesrsta knew that there was no lawful basis to keep Plaintiff in handcuffs, pursuant to his training (or lack thereof) and adaption of City policy, practice, or custom, he did not ask or evaluate *whether to charge* Plaintiff, but rather, *what crime to charge* Plaintiff with—ultimately refusing to release Plaintiff or to provide him immediate medical treatment.  He did, however, agree to call Plaintiff's wife and inform her of what had happened.

62.     While on the phone with Plaintiff's wife, Sergeant Nesrsta said that Plaintiff was being arrested for Resisting Arrest and for Simple Assault of a Peace

Officer.  This was despite the fact that Cagle offered conflicting versions of events, and Mendoza never corroborated any of them.

63.     Sergeant Nesrsta—and every other City employee on the scene—knew that Plaintiff was simply photographing an accident scene, but because they were not properly trained on Plaintiff's First or Fourth Amendment rights, they allowed Plaintiff's injuries to continue from Cagle's and Mendoza' unlawful acts. Instead, Mendoza joked with others about how he should have used his motorcycle helmet to injury Plaintiff.

64.     The handcuffed-Plaintiff was taken to St. Luke's Health's Brazosport Hospital in Lake Jackson in the back of a patrol car.  Plaintiff arrived at the hospital at about 2:00 PM.

65.     At the hospital, Plaintiff was handcuffed to the bed.  Plaintiff was evaluated for right knee and head pain, along with abrasions to his knee, head, and face.  Hospital staff performed an x-ray on his knee and a CT scan on his head and neck. The radiology revealed that Plaintiff, who had been taken to the ground, did have scalp swelling, but that he fortunately did not have a fractured skull or broken bones—injuries he easily could have received as a result of the excessive force Officer Cagle and Officer Mendoza used against him.

66.     An officer escort received a call around 3:00 PM and was ordered to release Plaintiff from custody.   The escorting officer removed the handcuffs,

returned Plaintiff's hat, wallet, and phone to him, and then apologized on behalf of Defendant City.

67.    Because Plaintiff was in police custody for two hours without his phone and belongings, he was unable to communicate with his crew concerning a landscaping job in Angleton.  Plaintiff ended up losing out on about $2,000.00 due to Defendants' unlawful arrest.

68.    Following the March 4, 2022, events, Plaintiff's video of the interaction and the attack went viral on YouTube.  Public outcry soon followed. Caving to public pressure, Lake Jackson agreed to investigate the incident.  Members of the public, calling for Officer Cagle to be removed from active duty to protect the public and charged with criminal offenses, were informed that Officer Cagle had been placed on paid leave while Defendant City's police department investigated the matter. Defendant City's Assistant Chief of Police promised transparency, but Defendant City refused to release any more information to the public.

69.    One March 9, 2022, five days after the incident, Defendant City accepted that public furor demanded an actual response.  Defendant Cagle was allowed to resign in order to allow him to maintain his peace officer license. Defendant Mendoza, who should have already been properly trained by Defendant City, was placed on unpaid leave and assigned remedial training on the areas of the law related to this incident. That afternoon, Defendant City released a press release

on their Facebook page informing the public of these actions. Defendant City also claimed that they were consulting with the District Attorney's office on potential criminal charges.

70.     Defendant City's claims are diminished by a closer inspection of the press release. Defendant Cagle attacked Plaintiff, injuring him, without more provocation than a verbal disagreement about the law. Defendant City ignores this clear excessive force, claiming that "[t]heir [officers'] actions were based on an erroneous understanding of law, which resulted in an arrest of a citizen who was legally videotaping a nearby traffic accident." While Defendant City admits that Plaintiff was unlawfully arrested, no mention is given to the physical violence Plaintiff suffered before the arrest, nor, per the press release, is Defendant Mendoza scheduled for re-training in de-escalation policies. Defendant City also gives no indication whether they intend to retrain the rest of their officers—who may have also received inadequate training on citizens' constitutional rights or on de-escalation policies—on these issues.

71.     In reviewing the actual findings issued to the Officer Cagle by Chief Kibodeaux, the City made clear that it should have been "quite evident" that Plaintiff was "completely within the law and not suspect[ed] of any criminal activity" and that "the force used was unnecessary in that the arrest was unnecessary."

72.     The same findings were not made concerning Officer Mendoza.  Chief Kibodeaux found that Officer Mendoza engaged in "Unsatisfactory Performance by a Sworn Officer."  Officer Mendoza's findings are silent to the fact that he also used force that was not warranted, and that he failed to intervene in any manner.

73.     The City clearly failed to recognize the fact that its officers—from the supervisors down—are not adequately trained on the use of force, or that they have a duty to intervene when an officer uses excessive force or makes a false arrest. Rather than highlight this error, and correct it with any sort of discipline, training, or counseling, it was completely ignored.  The City did not concern itself with correcting its officers looking at this situation from a, "what do we charge him with" instead of a, "did he even commit a crime?"  A reasonably trained officer would have quickly recognized that Defendants Cagle and Mendoza used excessive force and unlawfully detained Plaintiff.  However, the City of Lake Jackson police officers, armed with information of what occurred, failed to question Cagle's and Mendoza's conduct, and turned Plaintiff's detention into an arrest.

74.     The City's failure to require its officers to identify constitutional violations of fellow police officers, or to intervene when fellow police officers engage in violative conduct, and then fails to counsel, discipline, or train officers when they join in on the misconduct, this sends a clear message that the City acts with deliberate indifference to the rights of its citizens.

75.     As a result of the City's inadequate policies, failure to train, and failure to discipline, Plaintiff was harmed.  The City's policies, practices, and custom was a moving force of the constitutional violations, and it was foreseeable that Plaintiff would be harmed.

76.     As a result of this incident, Plaintiff suffered abrasions on his face and head and a deep cut to his knee from the concrete curb. Plaintiff, fortunately, narrowly missed hitting his head on the concrete curb when Defendants Cagle and Mendoza brought him to the ground, but the day after the incident, Plaintiff noticed a dull pain in his back.

77.     As of this writing, Plaintiff is undergoing medical treatment for his physical and emotional injuries.

78.     Plaintiff was recently diagnosed with having a disc protrusion because of this incident.

L5-S1 posterior left central 2 mm disc protrusion (herniation) with annular fissure (high intensity zone) extends into the epidural fat with mild left neural foraminal stenosis. Canal is patent.

Electronically Signed By:  Dang, Matthew
Board Certified by the American Board of Radiology
04/05/2022 3:31 PM

79.     Plaintiff was also diagnosed with having hernia in his groin.

3.  A 1.4 cm left inguinal hernia defect containing fat.

**Electronically Signed By:** Coleman, Kristin MD, Board Certified by The American Board of Radiology

**Signed On:** 5/5/2022 7:48:40 PM

80.     Plaintiff's back and knee pain started to subside but still causes discomfort.   Unfortunately, Plaintiff now struggles with stress, anxiety, and depression.  He can hardly sleep at night, and, when he wakes up, he cannot fall back asleep.   His mind keeps taking him back to Defendant Cagle's and Mendoza's assault and how Defendant Cagle nearly suffocated Plaintiff.

81.     Plaintiff had his constitutional rights to free speech and the freedom of the press violated by Defendant City and its police officers.  For engaging in this practice, Defendants Cagle and Mendoza assaulted him and then falsely arrested him.

82.     Sergeant Nesrsta—consistent with his training or lack thereof—arrived on scene, learned that Plaintiff was photographing an accident, and knew that there was no basis to lawfully detain or arrest Plaintiff.  He allowed the misconduct to continue by disregarding the facts and made the decision to arrest and charge Plaintiff with resisting arrest and assaulting a peace officer.

83.     Defendant City, through its Policymakers, previously admitted that Defendants Cagle and Mendoza lacked proper training, but gave no indication that it intended to ensure any of the rest of its officers, who may have also received inadequate training, are properly counseled, disciplined, or trained on a citizens' rights under the Constitution, or that they have a duty to intervene if they observe constitutional violations—rather than join in on the misconduct.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (First Amendment – Retaliation for Protected Conduct)

84.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

85.     Plaintiff asserts this claim against Defendants Cagle and Mendoza.

86.     At all times relevant, Defendants Cagle and Mendoza were acting under color of State law.

87.     Plaintiff has a clearly established right under the First Amendment to photograph and film police activity from public spaces. *See Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017) ("We conclude that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."); *Ibarra v. Harris Cnty*., 243 F. App'x 830, 833-34 (5th Cir. 2007) (finding plaintiff's arrest for refusing to stop taking photos during execution of a search warrant violated the Fourth Amendment when he was not otherwise committing a crime).

88.     It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, (1974) (Powell, J., concurring)) ("Trained officers must exercise

restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of protected speech activities."); *see City of Hous. v. Hill*, 482 U.S. 451, 462 (1987) ("[The] First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

89.     Defendants Cagle and Mendoza retaliated against Plaintiff when they attacked Plaintiff in response to him filming them and then verbally criticizing them for accosting him.

90.     In retaliation for engaging in protected conduct, Defendants Cagle and Mendoza targeted Plaintiff subjecting him to unlawful detainment, excessive force, and arrest without any lawful or other legitimate basis.  Defendants Cagle and Mendoza also seized Plaintiff's phone, wallet, and hat.

91.     Defendants' conduct was done in retaliation for Plaintiff's participation in constitutionally protected activity.

92.     At all relevant times, Defendants Cagle and Mendoza were required to obey the laws of the United States.

93.     Defendant Cagle's and Mendoza's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

94.    Defendant Cagle's and Mendoza's adverse actions were substantially motivated by Plaintiff's conduct of lawfully photographing and filming police activity from public spaces, and then by verbally criticizing them for attempting to unlawfully remove him from the public area.

95.    Defendants Cagle and Mendoza intentionally, knowingly, maliciously, reckless, unreasonably, and grossly negligently retaliated against Plaintiff for engaging in protected conduct.

96.    As a direct and proximate result of Defendant Cagle's and Mendoza's unlawful actions, Plaintiff was harmed.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Unlawful Arrest/Detainment)

97.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

98.    Plaintiff asserts this claim against Defendants Cagle and Mendoza.

99.    Defendants Cagle and Mendoza, at all relevant times, acted under the color of law.

100.    Defendants Cagle and Mendoza willfully detained or arrested Plaintiff by stopping him from photographing or filming police activity from a public space, and by stopping him from verbally criticizing police while demanding that he leave, and then choking him, tackling him, assaulting him, and sitting on him to restrict his

airway, before placing him in handcuffs, placing him the back of a police vehicle, and then transporting him to a hospital, where he remained handcuffed to a hospital bed.

101.    Defendants Cagle and Mendoza could only make a warrantless arrest of Plaintiff if they had probable cause and statutory authority to make an arrest.

102.    Defendants Cagle and Mendoza were without statutory authority to make a warrantless arrest.  Cagle and Mendoza could only make an arrest for offenses committed in their presence or view,[1] or if they had probable cause of certain offenses under Article 14.03 of the Texas Code of Criminal Procedure.  None of those situations applied here.

103.    Defendants Cagle and Mendoza knew that they were without lawful authority to detain or arrest Plaintiff as he was not violating any law or committing any crime.  Defendants Cagle and Mendoza did not have reasonable suspicion or probable cause to detain or arrest Plaintiff.   No reasonable officer could have believed there existed reasonable suspicion or probable cause to detain or arrest Plaintiff.

104.    An officer has probable cause "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was

---

[1] TEX. CODE CRIM. PROC. art. 14.01(b).

committing an offense." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (citations omitted).

105.   Viewing the totality of circumstances from the perspective of a reasonably trained officer in Cagle's and Mendoza's position, the information available was that:

- Plaintiff was standing dozens of feet away from an accident in a public space, where others were standing.

- Plaintiff appeared to be photographing or filming police officers engaged in their public duties.

- Plaintiff was not interfering or obstructing anyone.

- Plaintiff was not committing a crime by photographing or filming the accident scene.

- Plaintiff was not committing a crime by interrupting, disrupting, impeding, or interfering with Cagle and Mendoza by speech only.[2]

- Plaintiff was not suspected of committing any crime by photographing or filming police officers from dozens of feet away.

- Plaintiff was not committing any crime by verbally criticizing Defendant Cagle for accosting him.

- Plaintiff was not required to identify himself.[3]

- Plaintiff never initiated contact with Officer Cagle.

- Plaintiff never reached for anything at the time Officer Cagle initiated contact with Plaintiff.

---

[2] Tex. Penal Code § 38.15(c).
[3] *Id.* § 38.02(a), (b).

106.   Ultimately, Plaintiff acted completely within the law, and was not suspected of any criminal activity.  Chief Kibodeaux reached the same conclusion when he stated in his March 9, 2022, correspondence to Officer Cagle, "*The citizen, completely within the law and not suspect [sic] of any criminal activity, was not required to show identification. . . .  If effecting a lawful arrest, the force used in the incident was only that necessary to overcome resistance, but in this case, the force used was unnecessary in that the arrest was unnecessary*."

107.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

### <u>COUNT III</u>
### <u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983</u>
### <u>(Fourth Amendment – Excessive Force)</u>

108.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

109.   Plaintiff asserts this claim against Defendants Cagle and Mendoza.

110.   At all times relevant herein, Defendants Cagle and Mendoza were acting under the color of State law.

111.   It is clearly established that Plaintiff has the right under the Fourth Amendment to be free from excessive force during such a seizure.  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citation omitted).

112.   Defendants Cagle and Mendoza, while acting within the scope of their employment with the City of Lake Jackson Police Department, and under the color of law, choked, tackled, and assaulted Plaintiff for no lawful reason.

113.   Defendants Cagle and Mendoza applied force to Plaintiff, causing him injury, although there was no objectively reasonable basis for the force, since Plaintiff was not committing any crime, was not fleeing, and was not a threat to the officers.   Rather, Defendants embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause—and in fact caused—Plaintiff to suffer.

114.   Plaintiff sustained head and back injuries because of Defendants' conduct.  Plaintiff is still seeking treatment for his injuries.

115.   Defendant Cagle choked Plaintiff, then with Mendoza's help, tackled him to the ground before positioning Plaintiff with Plaintiff's stomach on the raised curb between the grass and road, and then straddled Plaintiff.  Plaintiff, obviously distressed, complained that he could not breathe, but Defendant Cagle continued to apply pressure on Plaintiff's back and chest areas further restricting Plaintiff's ability to breathe—all while Defendant Mendoza continued to assist Cagle.

116.   In addition to the choking and tackling, Defendant Cagle's continued and unreasonable kneeling on Plaintiff violated the Fourth Amendment.  *See, e.g., Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (recognizing that kneeling on

a subdued subject is force and that it was previously clearly established "that the continued use of force against a restrained and subdued subject violates the Fourth Amendment").

117.   Defendants Cagle and Mendoza violated Plaintiff's right to be free from excessive force when Defendants forcefully and intentionally choked, tackled, hit, and otherwise assaulted Plaintiff.

118.   Defendant Cagle's and Mendoza's conduct caused Plaintiff's injuries.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Unlawful Search/Seizure)

119.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

120.   Plaintiff asserts this claim against Defendants Cagle and Mendoza.

121.   At all times relevant herein, Defendants Cagle and Mendoza were acting under the color of State law.

122.   It is well-established that police officers are not permitted to make a search incident to an unlawful arrest.  *See United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) (explaining that an arrest must be lawful for the search-incident-to-arrest exception to apply).

123.   Defendants Cagle and Mendoza, while acting within the scope of their employment with the City of Lake Jackson Police Department, and under the color

of law, created meaningful interference with Plaintiff's possessory interests in his property.

124.   Defendants Cagle and Mendoza unlawfully arrested Plaintiff as they lacked probable cause to arrest him.  They then searched Plaintiff, seized his wallet, phone, and hat without any lawful basis to do so.

125.   Plaintiff was harmed as a result of Defendants' unlawful seizure.

**COUNT V**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourteenth Amendment – Failure to Provide Medical Care)**

126.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

127.   Plaintiff asserts this claim against Defendants Cagle and Mendoza.

128.   Plaintiff has a clearly established right to not have his serious medical needs met with deliberate indifference.   A state actor violates the constitutional rights of a person in custody by acting with deliberate indifference to the person's serious medical needs. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020), cert. denied, 141 S. Ct. 1379 (2021).

129.   At all times relevant herein, Defendants were acting under the color of State law.

130.   The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured in their custody.

131.   Defendants Cagle and Mendoza knew that Plaintiff was choked and tackled which resulted in head and back injuries that required immediate medical attention.  Defendant Mendoza admitted in three separate written statements that he noticed Plaintiff was bleeding from the back of his head.

132.   Neither Mendoza nor Cagle sought any medical treatment for Plaintiff.

133.   Defendants Cagle and Mendoza knowingly failed to provide or get immediate, necessary medical care for Plaintiff's serious medical need in deliberate indifference to the risk of serious harm to Plaintiff.

134.   Defendants provided the only ambulance to Defendant Cagle who complained of a minor finger injury.  Defendants treated Cagle's finger injury as an injury that required more attention than Plaintiff who complained of breathing difficulties and was bleeding from his head and arms.

135.   After unnecessary delay, Defendants eventually transported the handcuffed Plaintiff to the hospital in the back of police car.

136.   The failure to provide immediate medical injuries contributed to the severity of the injuries.  Plaintiff sustained a slipped disc in his back, and a hernia in his hip, together with scaring and disfigurement to his head, face, and arms.

137.   Plaintiff suffered injuries because of the Defendant Cagle's and Mendoza's excessive and brutal use of force.  Following this assault, Defendants refused to provide Plaintiff with immediate necessary medical care.

138.   Plaintiff's resulting harm was a direct consequence of Defendants' failure to provide necessary and immediate medical care to Plaintiff.

**COUNT VI**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Bystander Liability – Failure to Intervene)**

139.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

140.   Plaintiff asserts this claim against Defendant Mendoza.

141.   Defendant Mendoza observed Defendant Cagle engage in unlawful conduct and violate Plaintiff's constitutional rights.  Defendant Mendoza had a constitutional duty to intervene but failed to do so despite having a reasonable opportunity to do so.  It is clearly established that a bystander-officer is liable under Section 1983 when that officer "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

142.   At all times relevant herein, Defendants were acting under the color of State law.

143.   Defendant Mendoza observed Defendant Cagle engage in unlawful conduct and violate Plaintiff's constitutional rights.  Rather than intervene or prevent the harm from occurring, Mendoza joined Defendant Cagle in assaulting Plaintiff.

144.   Defendant Mendoza knew that Plaintiff did not commit any crime but did not prevent Defendant Cagle from violating Plaintiff's constitutional rights or intervene to stop the violations.  Defendant Mendoza also failed to release Plaintiff from custody, and then justified Officer Cagle's conduct by not vocalizing that Defendant Cagle was incorrect when he asserted that Plaintiff reached for something, and then later stated that Plaintiff initiated contact with Cagle.  Defendant Mendoza stood by and did what was necessary to support the unlawful arrest of Plaintiff.

145.   Each time Defendant Cagle provided his false version of events to others at the scene, Defendant Mendoza failed to correct these misstatements, and allowed the constitutional infractions to continue.

146.   Defendants Mendoza had multiple opportunities—and the means—to prevent constitutional harms from occurring.

147.   Defendant Mendoza joined in committing violations or stood by and let the harm unfold, acting with deliberate indifference.

148.   At all times relevant, Defendant Mendoza intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence, allowed his fellow officer to use excessive force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

149.   As a direct and proximate result of Defendants' unlawful actions,

Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## *MONELL* Liability

150.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

151.   Officers Cagle, Mendoza, Ryan, and Nesrsta were, at all times relevant, City of Lake Jackson police officers.

**A. The City of Lake Jackson is liable for Defendants' Excessive Force**

152.   The City of Lake Jackson is liable to Plaintiff since the City and its Policymakers promulgated or adopted a policy that was the "moving force" that caused one or more of its employees to violate Reyes' constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

153.   Defendants Cagle and Mendoza violated Plaintiff's constitutional rights when they applied excessive force in choking him, tackling him, and kneeling on him in retaliation of his vocal criticism of those officers for interfering with his First Amendment right to film or photograph police performing their duties in public.

154.   Despite the droves of Lake Jackson police officers and supervisors that arrived on scene, none of them raised any concern with Defendant Cagle's and

Mendoza's conduct considering them understanding that all Plaintiff did was film or photograph them handling an accident scene.   Not one officer recognized that Plaintiff had a First Amendment right to film and photograph police.  This means the policy of applying excessive force against individuals that engage in First Amendment activity of filming police is a persistent, widespread practice of City officials or employees, which, although not authorized by official adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

155.   The City, by unconstitutional action by its Policymakers, specifically City Manager Mundo and Chief of Police Kibodeaux—or by policy or custom— caused the deprivation of Reyes' constitutional rights.

156.   The City and its Policymakers (1) had a practice of failing to fully investigate officer-involved excessive use of force incidents involving individuals that film or record police, (2) had a practice of failing to discipline its officers that used excessive (absent public pressure) or that failed to intervene and stop fellow officers using excessive force, (3) failed to properly train its officers in the appropriate use of force, (4) failed to properly train its officers on the duty to intervene, and (5) failed to properly train its officers in a citizen's constitutional right to film or photograph police.

157.   The City and its Policymakers, pursuant to public pressure, investigated the incident and determined that Defendants Mendoza and Cagle acted under an erroneous understanding of the law and should have never applied any force to Plaintiff.  However, not a single officer was investigated or disciplined for failing to know that a citizen has a constitutional right to film police, or for failing to intervene.

158.   Defendants Mendoza and Cagle, complying with City policy, violated Plaintiff's constitutional rights.  Other Lake Jackson police officers, also following City policy, failed to recognize that Plaintiff's rights were being violated and allowed the harm to continue.

## B. The City of Lake Jackson is liable for failing to investigate and discipline its officers.

159.   The City of Lake Jackson's policy of inadequate officer discipline is unconstitutional because it demonstrates a deliberate indifference toward the constitutional rights of its citizens.

160.   The City of Lake Jackson viewed the incident with Plaintiff as if Officer Cagle was an outlier and acted inappropriately.  The City performed a purely formalistic investigation to meet this end.   Little evidence was taken, the investigative file was bare, and the conclusions were perfunctory.

161.   Officer Cagle was the scapegoat and forced to resign under pressure. The City required Officer Mendoza to sign a sworn statement under threat of being terminated.  The City did not discipline Cagle, Mendoza,, or any other officer present

at the scene, for training deficiencies or failing to identify that Plaintiff was assaulted and arrested for exercising his First Amendment rights.  The City did not investigate or discipline Mendoza, or other officers, for intervening and stopping the constitutional violations against Plaintiff from continuing.

162.   The investigation conducted was haphazard.   Plaintiff was not interviewed; other officers and City employees or agents on the scene were not interviewed; and written statements were made under duress.

163.   Specifically, Officer Mendoza stated one version of events in his written incident report.  A few days later, he wrote a completely different statement under threat of being terminated.  Officer Mendoza was not disciplined for making inconsistent statements.  Rather, this practice was encouraged by the City and its Policymakers.

164.   Had the City had a policy of investigating an officer's deficiencies pertaining to failing to recognize a citizens' right to film police and to verbally challenge police, as well as an officer's failure to intervene, then the City's officers would have identified the constitutional violations much sooner and prevented Plaintiff's harm.

165.   The City of Lake Jackson's policy of failing to investigate and discipline its officers for failing to recognize and protect Plaintiff's constitutional rights, was a moving force of Plaintiff's constitutional injury.

### C. The City of Lake Jackson is liable for its inadequate training policies

166.   The City of Lake Jackson failed to train its officers on the proper standards for use of force, a citizen's right to film or photograph police, unlawful arrest, and the duty to intervene.

167.   The City of Lake Jackson and its Policymakers, specifically City Manager Mundo and Chief of Police Kibodeaux, had inadequate training policies that resulted in Plaintiff's constitutional injuries.

168.   The City's training policies were adopted with deliberate indifference to its known or obvious consequences that Plaintiff would be harmed.  The City and its Policymakers knew that its officers would interact with citizens that filmed or photographed them performing public duties.  The City knew that its officers would need to use force and make arrests in the performance of their duties.  The City also knew that in the event of outlier situations, its officers had a requirement and duty to intervene and stop an officer from violating a citizen's constitutional rights.

169.   It is highly predictable that the City's police officers will follow standards and behavior adopted and authorized by the City.  The City acted with deliberate indifference when it failed to implement training policies to address these issues.  Accordingly, it was highly predictable that constitutional violations would occur because of this policy.

170.   Despite the number of City of Lake Jackson officers that arrived on the scene on March 4, 2022, and learned that Plaintiff was assaulted and arrested for filming police activity, not a single officer questioned whether Plaintiff was breaking the law.   They all assumed he was.   Plaintiff was in custody for nearly two hours, with much of this time in handcuffs and chained to a hospital bed.   It took the senior leadership of the police department to recognize what the City of Lake Jackson police officers did not—that Plaintiff did not commit any crime.   Chief Kibodeaux, through one of his lieutenants, made the decision to have Plaintiff released from custody.   This situation is reflective of the City's inadequate training policies which was a moving force of Plaintiff's constitutional injury.

171.   Here are the events told by different responding Lake Jackson police officers about what they understood happened:

- **Sergeant Justin Nesrsta**:   "Reyes walked up and started video taping. Corporal Ryan advised that Officer Cagle approached Reyes and advised him that he did not need to be video taping everybody's private information and license plates."

- **Coporal Randal Ryan**:   "I was informed [Reyes] arrived filming the accident scene and people's information and was asked to leave, which he refused."

- **Officer Richard Park**: "I was briefly advised that [Plaintiff] was

filming Officers on the traffic accident scene before making verbal contact with Officer Cagle.

- **Officer Oscar Mendoza**:   "I approached both Officer Cagle and Rolando and Officer Cagle told me to tell Rolando that it was illegal to record vehicle license plates.  All I told Rolando was 'Not here not right now' to which Rolando asked what I was going to do if he did not stop recording."

172.   Not a single officer was questioned, trained, counseled, or disciplined for their failure to recognize that Plaintiff was not breaking the law.  Hence, the City and its Policymakers acknowledged its inadequate training policies and condoned the conduct of its deficiently trained officers.

173.   Defendant Cagle was acting under the color of law and acting pursuant to customs, practices, and policies of the City of Lake Jackson, and more specifically, the Lake Jackson Police Department, in regard to the use of force as authorized or ratified by the Policymakers, specifically City Manager Mundo and Chief of Police Kibodeaux, when Mendoza and Cagle deprived Reyes of rights and privileges secured to him by the First and Fourth Amendments to the United States Constitution.  This was a direct result of the City failing to provide proper training in the use of force, a citizens' right to film police, and an officer's duty to intervene, which is a violation of Section 1983.

174.   The City of Lake Jackson and its police department failed to adequately train, supervise or discipline its employees regarding the unnecessary and excessive use of force, and unlawful arrest of Plaintiff.  Plaintiff was in handcuffs for hours while chained to a hospital bed before finally being released.  Had the City adequately trained its officers, Defendants Cagle and Mendoza, as well as other responding officers and supervisors, would have known from the beginning that Reyes was never suspected of committing any crime, and any use of force against Reyes was wrong.

175.   The failure to train, supervise or discipline its employees in this manner reflects a deliberate indifference to the City of Lake Jackson, the Lake Jackson Police Department, City Manager Mundo, and Chief of Police Kibodeaux, to the rights of the City's inhabitants and is actionable under Section 1983.

176.   The City of Lake Jackson, the Lake Jackson Police Department, City Manager Mundo, and Chief of Police Kibodeaux developed and maintained a policy of deficient training of its police force in the use of force, in the apprehension and wrongful detention of individuals, a citizen's right to film police activity, and the constitutional duty to intervene. The City's training is designed and implemented by City Manager Mundo and Chief Kibodeaux to act in this regard.

177.   The City of Lake Jackson, the Lake Jackson Police Department, City Manager Mundo, and Chief of Police Kibodeaux's failure to provide adequate

training to its police officers regarding the use of force, wrongful arrest/detentions, a citizen's right to film police, and the constitutional duty to intervene, reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive force on citizens engaged in protected activity such as filming police handling a traffic accident, and that observing officers would fail to act to prevent the harm or stop it from continuing, which made the violations of Reyes's constitutional rights, foreseeable and a reasonable probability.

178.  Upon information and belief, the City of Lake Jackson, the Lake Jackson Police Department, City Manager Mundo, and Chief of Police Kibodeaux acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Reyes, failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Reyes, and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Reyes from receiving the protection, assistance and care he deserved.

179.  For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Reyes's constitutional rights:

(a) The inadequacy of Lake Jackson Police Department's policies, training, supervision, or discipline relating to the use of excessive and unnecessary force;

(b) The inadequacy of Lake Jackson Police Department's policies, training, supervision, or discipline relating to an individual's First Amendment right to film police officers performing public duties;

(c) The inadequacy of Lake Jackson Police Department's policies, training, supervision, or discipline relating to an officer's constitutional duty to intervene when a fellow officer violates a citizen's constitutional rights;

(d) The failure to adopt an objective continuum of force policy, and allowing officers to make a subjective continuum of force evaluation, which can be expressly avoided, and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene;

(e) Using excessive force against Reyes although he was complaint, did not commit any crime, and was not an immediate threat; and

(f) The wrongful arrest and unreasonable detention of Reyes despite the fact that he did not commit any crime (and Defendant Officers knew this).

180.   In addition, Defendant City, as applicable, failed and refused to implement customs, policies, practices, or procedures, and failed to train its personnel adequately on the appropriate policies, practices, or procedures regarding the use of force and the wrongful detention of individuals. In so doing, Defendant City knew that it was acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Reyes' injuries—in all reasonable probability would occur.

181.   Had Defendants Cagle and Mendoza been properly trained in a citizen's right to photograph and film police activity, and how to interact with citizens engaging in protected activity such as photographing police activity, Defendants Cagle and Mendoza would have never had any reason to detain Plaintiff, assault

Plaintiff, arrest Plaintiff, and then maintain custody of Plaintiff for an unreasonable period.

**D. The City of Lake Jackson is liable for its failure to supervise its officers.**

182.   On Plaintiff's governmental liability claim against the City of Lake Jackson for failing to supervise and discipline its officers for prior violations and the resulting lack of supervision:

(a) The City and Chief Kibodeaux failed to adequately supervise or discipline its employees in handling usual and recurring situations with which they deal.

(b) Chief Kibodeaux was deliberately indifferent to the need to supervise or discipline its officers or employees adequately.

(c) The failure to adequately supervise and discipline its officers proximately caused the deprivation of Reyes' constitutional rights.

(d) The City and Chief Kibodeaux failed to adequately supervise or discipline Defendants Cagle and Mendoza for detaining, assaulting, and unlawfully arresting Plaintiff.

(e) The City and Chief Kibodeaux failed to adequately supervise or discipline officers on the scene, such as Officer Mendoza, Corporal Ryan, and Sergeant Nesrsta (both supervisors), for failing to intervene and immediately releasing Plaintiff from custody as soon as they recognized

that Plaintiff committed no crime and was arresting for filming and photographing police performing public functions.

183.    Despite having knowledge of Defendant Officers' violations of the City of Lake Jackson use of force policies, and other best police practices—such as recognizing an individual's right to film police, and the constitutional duty to intervene—(1) Defendant City and its Policymakers refused to adequately discipline Officers Mendoza, Ryan, Nesrsta, and others; (2) allowed Cagle to resign before any criminal investigation so as to preserve his peace officer license, (3) and failed to immediately release Reyes from custody.

184.    The City of Lake Jackson issued a news release on March 4, 2022, stating in part that Defendants Cagle and Mendoza acted "based on an erroneous understanding of law, which resulted in an arrest of a citizen who was legally videotaping a nearby traffic incident."

185.    Defendant City is liable under 42 U.S.C. § 1983 if the supervisor failed to train or supervise the officers involved, there is a casual connection between the alleged failure to supervise or train and the alleged violation, and the failure to train or supervise constituted deliberate indifference.

186.    Had Defendants Cagle and Mendoza been properly trained in a citizen's right to photograph and film police activity, and how to interact with citizens engaging in protected activity such as photographing police activity, Defendants

Cagle and Mendoza would have never had any reason to detain Plaintiff, assault Plaintiff, arrest Plaintiff, and then maintain custody of Plaintiff for an unreasonable period.

187. Had Defendant City's officers (Mendoza, Ryan, and Nesrsta, for instance) been properly trained in their constitutional duty to intervene when another officer violations a citizen's constitutional rights, then they could have stopped the harm from occurring or prolonging.

188. Defendant City's training was so inadequate or nonexistent that it should have predicted that an untrained officer would have acted in a way that Officers Cagle, Mendoza, Ryan, Nesrsta, and others did.

189. Defendant City's failure to adequately supervise or discipline its officers was therefore the moving force behind Plaintiff's damages.

### E. The City of Lake Jackson falsely arrested Reyes although he did not commit a penal offense

190. Plaintiff would show that the defendant officers' actions were objectively unreasonable and done in bad faith in that it resulted in the wrongful arrest of Plaintiff without probable cause, for no lawful reason.  Reyes did not commit a crime as the evidence would show and simply was exercising his First Amendment right to photograph police activity from a public space dozens of feet away.  Then, Officer Cagle, for no objective reason, approached Plaintiff and demanded that he cease his protected activity under threat of arrest, and when he

refused, was choked, tackled, and assaulted which caused Reyes' injury, before Cagle and Mendoza detained and arrested him without any lawful purpose. Reyes suffered damages as a result of his wrongful arrest, and these arrests were done under the color of law.

191. Defendant City is directly responsible for the individual Defendants' conduct described herein.

## DAMAGES

192. **Actual damages.** Defendants' acts or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff, and Defendants should be held jointly and severally liable for the physical injuries, mental anguish, emotional distress, loss of potential income, delay in medical treatment, disfigurement for any scarring, and damage to his phone which was stepped on by one or more officers.

193. **Punitive/Exemplary Damages against individual defendants.** Punitive/exemplary damages are recoverable under Section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of Defendants Cagle and Mendoza was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Reyes. As such, Reyes requests punitive and exemplary damages from Cagle and Mendoza

to deter this type of conduct in the future.

194.   Prejudgment and post judgment interest.

195.   Costs of court.

196.   Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

197.   Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby affirm that on this 24th day of August 2022, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record via electronic service.

*/s/ Brandon J. Grable*
Brandon J. Grable