IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **ROLANDO REYES, JR.,** *Plaintiff* | § § § § |
| vs. | § § Case No.: 3:22-cv-114 § JURY |
| **JOHNNY CAGLE, OFFICER O. MENDOZA, OFFICER JOHN DOE and CITY OF LAKE JACKSON** *Defendants.* | § § § § § § |

**PLAINTIFF'S RESPONSE TO
DEFENDANT CITY'S AMENDED MOTION TO DISMISS**

TO THE HONORABLE JEFFREY VINCENT BROWN, U.S. DISTRICT JUDGE:

Plaintiff **ROLANDO REYES, JR.**, by and through his attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this response to Defendant City's motion to dismiss made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, titled, *Defendant's Amended Motion to Dismiss*, filed at Dkt. No. 27.[1]

### I.   STATEMENT OF ISSUES PRESENTED

Whether Plaintiff sufficiently alleged facts to state claims for excessive force (Count III), failure to provide medical care (Count V), bystander liability (Count VI), and *Monell* claims (Count VII).

---

[1] As with the City's first motion to dismiss, filed at Dkt. No. 7, Defendant City failed to follow Rule 6 of the *Galveston District Court Rules of Practice* before filing its current dispositive motion at Dkt. No. 27.

## II. FACTUAL BACKGROUND

Plaintiff, standing at a public grass easement, photographed Defendant Officers Cagle and Mendoza handling a minor accident scene. Defendants Cagle and Mendoza, pursuant to the City's inadequate training policies, were not aware that Plaintiff had a constitutional right to film and photograph them performing their duties. Defendants attempted to stop him from engaging in this protected activity by approaching him and telling him he was breaking the law and that he needed to leave. Plaintiff engaged in his First Amendment right to inform the officers that what they were doing was unlawful. In response, Defendant Cagle choked Plaintiff and knocked his phone out of his hand while he and Mendoza tackled him to the ground and handcuffed him. Plaintiff sustained head and back injuries. Plaintiff remained in COLJ's custody for nearly two hours before the City's policymakers recognized that Plaintiff did not commit any crime and ordered his release.

During the City's haphazard investigation, Cagle resigned, and Mendoza made a statement (inconsistent with his incident report) under duress blaming Cagle. Neither Mendoza (nor any other officer present at the scene) was disciplined for failing to intervene or for making inconsistent statements. Despite several officers and supervisors being present on the scene and having information that Plaintiff was not committing any crime, the City did not investigate or discipline anyone for failing to intervene. Plaintiff alleges that the officers' conduct, together with the City's, constitutes deliberate indifference and ratification.

### III. RELEVANT PROCEDURAL BACKGROUND

#### A. *Plaintiff's Live Pleadings*

Plaintiff recently filed *Plaintiff's Second Amended Complaint*, at Dkt. No. 23, asserting the following claims:

- **Count I**: First Amendment retaliation against Defendant Officers Cagle and Mendoza.

- **Count II**: Fourth Amendment unlawful arrest/detention against Defendant Officers Cagle and Mendoza.

- **Count III**: Fourth Amendment excessive force claims against Defendant Officers Cagle and Mendoza.

- **Count IV**: Fourth Amendment unlawful search/seizure claims against Defendant Officers Cagle and Mendoza.

- **Count V**: Fourteenth Amendment failure to provide medical care against Defendant Officers Cagle and Mendoza.

- **Count VI**: Bystander liability claim against Defendant Officer Mendoza.

- **Count VII**: *Monell* claims against the City of Lake Jackson for failing to investigate, discipline, supervise, train its officers, and for unlawfully arresting Plaintiff, and ratifying its officers' unlawful conduct.

#### B. *Defendant Officers Cagle's and Mendoza's Answer*

Defendant Officers answered *Plaintiff's Second Amended Complaint* at Dkt. No. 25. Notably, these defendant officers now admit that "Plaintiff was not committing a

crime by video-recording." *See* Dkt. No. 25 at ¶ 105. Officer Cagle further responded that he could "not recall being trained by the City or in other police academies or courses on whether a citizen has a right to film or photograph police." *See* Dkt. No. 25 at ¶ 166.

C. <u>*Defendant City's 12(b)(6) Motion to Dismiss*[2]</u>

Defendant City filed a motion to dismiss at Dkt. No. 27. In that motion, Defendant City, <u>without asserting qualified immunity for any officer</u>, contests that it is entitled to dismissal on the following grounds:

- **Medical Care** (**Count V** asserted against individual defendants): "There are no facts alleged that COLJ Officers were aware of information that could lead to the inference" that Plaintiff suffered a medical emergency, that officers knew how serious that injury was, but disregarded it. *See* Dkt. No. 27 at 3.

- **Intervention** (**Count VI** asserted against individual defendants): "The amended complaint does not provide fact-based allegations of a policy or previous incidents giving rise to a custom involving COLJ Officer Mendoza for failing to intervene . . . ." *See* Dkt. No. 27 at 4.

- **Excessive Force** (**Count III** asserted against individual defendants): "Without specific pleadings about incidents whereby COLJ Officers used excessive and objectively unreasonable force to effectuate an arrest, the claim should be

---

[2] Defendant City did not move to dismiss Plaintiff's *Monell* claims for failing to investigate, ratification, or for falsely arresting Plaintiff. *Compare* Dkt. No. 23 at ¶¶ 159-165, 173, and 190-191 with Dkt. No. 27. Defendant City has not otherwise responded to Plaintiff's complaint.

dismissed." *See* Dkt. No. 27 at 5.

- **Discipline (Count VII)**: "[T]he amended complaint . . . does not contain any example of systematic inattention by COLK to citizen complaints . . . ." *See* Dkt. No. 27 at 6.

- **Training (Count VII)**: "Reyes has failed to adequately plead deliberate indifference, which requires a pattern of similar conduct[,]" and "the pleadings do not state how a specific training program that was defective and/or do not allege the complete absence of training for the Officers in question and how such reflects deliberate indifference by COLJ . . . ." *See* Dkt. No. 27 at 7-8.

- **Supervision (Count VII)**: "[T]he complaint does not allege facts reflecting a pattern of constitutional violations due to inadequate Officer supervision . . . ." *See* Dkt. No. 27 at 10.

## IV.  ARGUMENTS AND AUTHORITY

Plaintiff's complaint meets the pleading standards required to assert claims against the City of Lake Jackson. Defendant City boldly misrepresents, repeatedly, that the complaint is insufficient and does not assert viable claims. For these reasons, and as shown below, Defendant City's motion to dismiss, filed at Dkt. No. 27, should be denied in its entirety.

A.  *<u>Standard of Review</u>*

The sufficiency of Plaintiff's pleadings is governed by FED. R. CIV. P. 8(a)(2) and FED. R. CIV. P. 12(b)(6). All that is required under the Federal Rules of Civil Procedure

is for Plaintiff to plead "a short and plain statement of the claim showing that [he is ] entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary." *Inhale, Inc. v. Gravitron, LLC*, 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiff and assumes that all facts in Plaintiff's complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Finally, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

**B.** <u>**Pattern Not Required**</u>

Defendant City asserts different portions of Plaintiff's *Monell* claims fail because Plaintiff did not provide other instances to demonstrate a pattern of constitutional violations. Defendant City refuses to acknowledge that a single occurrence—such as what Plaintiff alleges—is in fact sufficient to assert claims of municipal liability.

Deliberate indifference can inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Bd. Of Cty. Comm'rs v. Brown,* 520 U.S. 397, 409 (1997) (construing *City of Canton v. Harris*, 489 U.S. 378, 390 &

n.10 (1989)). That is, a single incident may be sufficient to show deliberate indifference where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train. *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003) (citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000)). The Supreme Court in *Canton* gave a hypothetical for such a situation:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so obvious" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Canton*, 489 U.S. at 390 n.10 (majority opinion). Under those circumstances, the need for training is clear because without training, there would be no way for novice officers to obtain the legal knowledge they require to carry out their clear and recurring constitutional obligations. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 (5th Cir. 2018).

The Fifth Circuit outlined how a single incident can be sufficient to fasten liability on a municipality in *Littell v. Houston Indep. Sch. Dist.* In *Littell*, a school police officer authorized several middle school girls to be strip searched after $50 went missing in a choir class. *Littell*, 894 F.3d at 620. Relying on *Canton*, the Fifth Circuit held that this one instance of a constitutional violation was sufficient to plausibly allege

deliberate indifference by the school. *Id.* at 629.

The allegations in *Littell*, like the allegations asserted in this lawsuit, mirror *Canton's* hypothetical in all material respects. The *Canton* hypothetical discusses the constitutional duty not to use excessive force when conducting arrests, while *Littell* addresses the constitutional duty not to conduct unreasonable searches. *Id*. The *Canton* hypothetical makes clear that excessive force law is sufficiently clear to ground failure-to-train liability, and because the duties with respect to searches are arguably defined with greater specificity, then it too is sufficiently clear to ground failure to train liability. *Id.* at 626.

A citizen's right to gather news by way of recording is arguably even more clearly defined than either of the previous two examples. *See Turner v. Driver*, 848 F.3d 687, 688 (5th Cir. 2017) ("The First Amendment protects freedom of speech and freedom of the press. But the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. [T]here is an undoubted right to gather news from any source by means within the law." (internal quotations omitted)).

Clearly, Plaintiff's First Amendment right is sufficiently clear to ground failure-to-train liability as described in *Canton*. Further, as in *Canton* and *Littell*, the constitutional duty not to interfere with citizens' rights to record is likely to arise "in recurrent situations that a particular employee is certain to face." *Littell*, 894 F.3d at

626. Given the fact that most Americans own a phone capable of recording, it is almost impossible to think that a police officer will not encounter a citizen who is exercising this First Amendment right.

This is the same with the duty to intervene. The Southern District of Texas previously recognized that "common sense and a reasonable policeman's sense of duty would" imply and require "a duty on the part of police to stop an officer from applying excessive force where the circumstances do not warrant it." *Parker v. Mo. City*, No. 4:12-CV-2484, 2015 U.S. Dist. LEXIS 93040, at *37 (S.D. Tex. July 17, 2015).

These holdings make it clear that officers and police departments needed to be trained and ready to recognize a citizen's rights that may be filming police officers performing government functions in public—even if the officers find it irritating, and that officers have a duty to intervene to stop other officers from applying excessive force.

Given the inevitability that their officers would be put in a situation where they were required to perform their functions while citizens recorded them—or a commonsense duty to intervene would be present—Defendant City knew that not training on these situations would almost surely lead to constitutional violations. Defendant City failing to provide this training is the kind of deliberate indifference which creates municipal liability for Section 1983 failure-to-train claims.

Defendants contend (again) "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on a municipality, for the officer's

shortcomings may result from factors other than a faulty training program." *See* Dkt. No. 7 at ¶ 3, Dkt. No. 27 at 7. (citing *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)). This is neither an accurate statement of the law nor is it directly applicable to the facts of the case at bar.

As noted above, the Supreme Court and Fifth Circuit have outlined several scenarios in which one officer's conduct is sufficient to fasten liability on a municipality. *See City of Canton v. Harris*, 489 U.S. 378 (1989) (decided four years after *Oklahoma City v. Tuttle*); *Brown v. Bryan County*, 219 F. 3d 450 (5th Cir. 2000); *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616 (5th Cir. 2018).

The *Oklahoma City v. Tuttle* case concerned a single incident by a single nonpolicymaking officer. *Tuttle*, 471 U.S. at 824. Plaintiff's allegations are of a different nature as this concerned several officers. Neither Officers Cagle nor Mendoza were aware of Plaintiff's constitutional right to record from a public space. Further, several other officers were on scene—immediately learned that Plaintiff was assaulted and arrested for filming police—and none of them did anything to redress the violations that had already occurred. Rather, each of the officers were complicate in allowing the violation to continue—because of Defendant City's failure to train, investigate, and discipline constituted deliberate indifference and ratification of the conduct.

C. <u>*Plaintiff Sufficiently Pled a Failure to Provide Medical Care Claim*</u>

Defendant City argues that the complaint does not assert any facts "that COLJ

Officers were aware of information that could lead to the inference" that Plaintiff suffered a medical emergency, that officers knew how serious that injury was, but disregarded it. *See* Dkt. No. 27 at 3.

As recently reiterated by the 5th Circuit Court of Appeals:

> [P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference. To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference.

*Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (cleaned up).

Here, is it undisputed that Plaintiff was a pretrial detainee with a right to medical care. Rather, Defendant City contests whether Plaintiff sufficiently plead that the individual defendant officers acted with deliberate indifference.

Plaintiff sufficiently plead that Cagle choked Plaintiff in front of Mendoza, and that Mendoza—rather than intervening and stopping the assault—helped tackle Plaintiff. Dkt. No. 23 at ¶¶ 39, 115. Cagle then straddled Plaintiff, applying his full body weight on Plaintiff while Plaintiff laid across a raised curb—which restricted his breathing. *Id*. at ¶¶ 44, 115. Plaintiff complained to Cagle and a supervisor that he was not able to breathe, but he was ignored. *Id*. at ¶¶ 40, 45. Officers saw that Plaintiff was bleeding from multiple abrasions, to include from his head. *Id*. at ¶¶ 56-59. The City's officers knew that Plaintiff suffered serious injuries, but they refused to immediately attend to him. *Id*. at ¶¶ 41, 134.

Element 1 requires that Plaintiff plead that "the official was aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists." *Kelson*, 1 F.4th at 417. Plaintiff asserted that "Defendants Cagle and Mendoza knew that Plaintiff was choked and tackled which resulted in head and back injuries that required immediate medical attention." Dkt. No. 23 at ¶¶ 41, 131.

Element 2 requires that "the official actually drew that inference." *Kelson*, 1 F.4th at 417. Plaintiff asserted that these officers drew this inference, because Mendoza highlighted Plaintiff's head injuries "in three separate written statements." Dkt. No. 23 at ¶ 131. Mendoza and Cagle "informed other officers that Plaintiff's head hit the concrete." *Id*. at ¶ 58.

Plaintiff sufficiently pled that he had patently visible head injuries, and other abrasions, and complained of not breathing, but defendants failed to act. Plaintiff sufficiently plead that Mendoza and Cagle entirely failed to treat him despite his protestations and visible head injuries. Moreover, Plaintiff asserted that Defendant Mendoza mocked Plaintiff when he joked with other officers about whether he should have used his motorcycle helmet to strike Plaintiff. Dkt. No. 23 at ¶ 63. All these things, taken together, is enough to allege that officials refused to treat him, ignored his complaints, and engaged in conduct that "clearly evinced a wanton disregard for any serious medical needs." *Kelson*, 1 F.4th at 419 (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

D. <u>*Plaintiff Sufficiently Pled a Failure to Intervene Claim*</u>

Defendant City argues "[t]he amended complaint does not provide fact-based

allegations of a policy or previous incidents giving rise to a custom involving COLJ Officer Mendoza for failing to intervene . . . ." *See* Dkt. No. 27 at ¶ 4.

Plaintiff properly asserted a bystander liability claim against Officer Mendoza. *See* Dkt. No. 23 at ¶¶ 141-149. Plaintiff sufficiently pleads a bystander claim where an officer is alleged to have "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

The specific claim against the City is for its failure to train, investigate, and discipline its officers concerning their constitutional duty to intervene. *Id*. at ¶¶ 156, 157, 164, 166, 168, 173, 176, 177, 179, 182, 183, 187. Plaintiff pled that the City and its Policymakers failed to investigate, discipline, or train its officers concerning this obligation. Even where the City and its Policymakers investigated this incident, they failed to recognize any failure to intervene, did not train on it, and did not discipline anyone for failing to intervene. *See* Dkt. No. 23 at ¶¶ 72-74.

Even though the City and its Policymakers knew that Mendoza joined in on the assault of Plaintiff—and that other responding officers knew that Plaintiff was assaulted and arrested for filming police activity—the City failed to discipline anyone for failing to intervene; and none of them were required to be re-trained pertaining to their duty to intervene. *See* Dkt. No. 23 at ¶¶ 73-74, 171-173. The City ratified Mendoza's failure to intervene. *Id*. at ¶ 173.

E. *<u>Plaintiff Sufficiently Pled an Excessive Force Claim</u>*

Defendant City contends that "[w]ithout specific pleadings about incidents whereby COLJ Officers used excessive and objectively unreasonable force to effectuate an arrest, the claim should be dismissed." *See* Dkt. No. 27 at ¶ 5.

As described above, single instances are sufficient to fasten liability on a municipality. While it has been well settled since at least 2017, that Plaintiff has a constitutional right to film police, Defendant Cagle approached him and assaulted him because, according to Cagle, he was not trained that Plaintiff had such rights. *See* Dkt. No. 25 at ¶ 166. This lack of training, together with inadequate investigation and discipline, was the moving force behind Plaintiff's constitutional harm. *See* Dkt. No. 23 at ¶¶ 152-158.

F. *<u>Plaintiff Sufficiently Pled a Failure to Discipline Claim</u>*

Defendant City contends "the amended complaint . . . does not contain any example of systematic inattention by COLK to citizen complaints . . . ." *See* Dkt. No. 27 at ¶ 6. Again, the City ignores that Plaintiff can plead—and has pled—a single occurrence to fasten liability on the City. *See* Dkt. No. 23 at ¶ 159-165. More specifically, the City and its Policymakers used Cagle as the scapegoat for this one instance, and pressured Mendoza to make a sworn statement under threat of arrest. Plaintiff was not interviewed, responding officers were not interviewed, and no one other than Mendoza was disciplined. Once Mendoza caved under threat of arrest and pointed the finger at Cagle, Cagle resigned, and the City closed its investigation.

G.  *<u>Plaintiff Sufficiently Pled an Inadequate Training Claim</u>*

Defendant City contends "Reyes has failed to adequately plead deliberate indifference, which requires a pattern of similar conduct[,]" and "the pleadings do not state how a specific training program that was defective and/or do not allege the complete absence of training for the Officers in question and how such reflects deliberate indifference by COLJ . . . ." *See* Dkt. No. 27 at ¶¶ 7-8.

This is simply not correct, as evident by Plaintiff's allegations at paragraphs 166 through 181, at Dkt. No. 23. First, as noted above, Plaintiff does not need to assert a pattern of similar conduct. Second, the pleadings due state how the specific training program was defective. This is further evident by Defendant Cagle's own admission that he was not trained on Plaintiff's constitutional right to film police performing public duties. *See* Dkt. No. 25 at ¶ 166.

H.  *<u>Plaintiff Sufficiently Pled a Failure to Supervise Claim</u>*

Defendant City contends "the complaint does not allege facts reflecting a pattern of constitutional violations due to inadequate Officer supervision . . . ." *See* Dkt. No. 27 at ¶ 10. Certainly, a single occurrence is enough—especially where the supervisors here responded to a scene that arose from what should be construed as an everyday occurrence between police officers and citizens. *See* Dkt. No. 23 at ¶ 182. There were two supervisors that arrived on scene, and rather than question whether Plaintiff broke the law—which he did not—they only asked what he should be charged with. Every officer knew or should have known that Plaintiff was engaged in protected conduct,

but no one acted as a reasonable officer would. This is a failure of the City to supervise. *See generally id*. at ¶¶ 182-189.

### I. *Plaintiff Does Not Seek Punitive Damages Against the City of Lake Jackson*

Defendants move to dismiss the punitive damages claim with respect to the Defendant Officers in their "official" capacity. Plaintiffs are not seeking punitive damages against the City of Lake Jackson, but rather seeking punitive damages from the individual defendants in their individual capacities.

### V. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully requests this Honorable Court deny Defendant City's motion to dismiss. In the alternative, if this Court finds any pleading- related issues in Plaintiffs' complaint, Plaintiffs respectfully request this Court grant an opportunity to amend. Plaintiff further requests all other relief to which he may be entitled in law or equity.

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby affirm that on this 12th day of September 2022, the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*